**Hina YOUNIS**

v.

**Nauman FAROOQI.**

**Civil No. CCB–07–1393.**

United States District Court,
D. Maryland.

Feb. 10, 2009.

John J. Condliffe, Shub Condliffe Condliffe and Silverstein PA, Towson, MD, for Plaintiff.

Stephen John Cullen, Miles and Stockbridge PC, Towson, MD, Jennifer M. Schwartzott, Miles and Stockbridge PC, Baltimore, MD, for Defendant.

## MEMORANDUM

CATHERINE C. BLAKE, District Judge.

Now pending before the court are cross motions for summary judgment filed by the defendant, Nauman Farooqi ("Mr. Farooqi"), and the plaintiff, Hina Younis ("Ms. Younis"). The dispute arises from Mr. Farooqi's obligation to support Ms. Younis pursuant to an Affidavit of Support that he signed after they were married. The issues in these motions have been fully briefed and no hearing is necessary. For the reasons stated below, the defendant's motion will be denied and the plaintiff's motion will be granted.

## BACKGROUND

The plaintiff, Ms. Younis, a citizen of Pakistan, came to the United States in 2003 to marry the defendant, Mr. Farooqi, a United States citizen. Soon after they were married, Mr. Farooqi signed an Affidavit of Support Form I–864 (the "affidavit") on May 23, 2003, agreeing to sponsor Ms. Younis and provide her with the necessary support to "maintain [her] at an income that is at least 125 percent of the Federal poverty guidelines." During the marriage, the couple resided in Catonsville, Maryland.

The couple separated on January 27, 2006, when Mr. Farooqi left the marital home, and Ms. Younis filed for a limited divorce on March 7, 2006. In June 2006, the Circuit Court for Baltimore County granted Ms. Younis sole legal and primary physical custody of the couple's only child and ordered Mr. Farooqi to pay child support in the amount of $544 per month. In January 2007, Mr. Farooqi consented to pay $450 per month in temporary alimony. In April 2008, the court increased the child support payments to $556 per month and alimony to $850 per month and made the increases retroactive to February of that year. At all times Mr. Farooqi has been in compliance with these court orders.

On May 25, 2007, Ms. Younis filed this claim to enforce Mr. Farooqi's financial obligations under the affidavit.[1] Mr. Farooqi filed his motion for summary judgment on July 18, 2008. He concedes that he has an obligation under the affidavit and that the affidavit is valid. He contends, however, that his obligation should be reduced by the plaintiff's alimony and child support, any wages she has received, and cash gifts she received from friends and fellow mosque members after the separation. He further contends that Ms. Younis has failed to mitigate her losses by finding paid, full-time employment. Ms. Younis filed her motion for summary judgment on September 12, 2008.

---

1. In her original complaint, Ms. Younis mislabeled the affidavit as an I–184 form. She filed an amended complaint correcting the error on August 27, 2007.

## ANALYSIS

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The Supreme Court has clarified this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir.2003) (alteration in original) (quoting Fed.R.Civ.P. 56(e)). The court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witness' credibility," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir.2002), but the court also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir.1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

## A. Defendant's Motion for Summary Judgment

 Under federal law, immigrants who are likely to become a public charge are ineligible for admission into the United States, 8 U.S.C. § 1182(a)(4), unless their applications for admission are accompanied by an Affidavit of Support Form I–864, *see* 8 U.S.C. §§ 1182(a)(4)(B)(ii), 1183a(a)1. A person petitioning for the admission of a family-sponsored immigrant must also sign a Form I–864 affidavit. 8 U.S.C. 1182(a)(4)(C)(ii). This affidavit is considered a legally enforceable contract between the sponsor and the sponsored immigrant. *Shumye v. Felleke*, 555 F.Supp.2d 1020, 1023 (N.D.Cal.2008). The signing sponsor submits himself to the personal jurisdiction of any federal or state court in which a civil lawsuit to enforce the affidavit has been brought. *See* 8 U.S.C. § 1183a(a)(1)(C). The sponsor's obligation under the affidavit does not terminate in the event of divorce. *See Shumye*, 555 F.Supp.2d at 1024.

By signing the affidavit, the "sponsor agrees to provide support to maintain the sponsored alien at an annual income that is not less than 125 percent of the Federal poverty line during the period in which the affidavit is enforceable." 8 U.S.C. § 1183a(a)(1)(A). The terms of the affidavit provide for the appropriate "measure of damages that would put plaintiff in as good a position as she would have been had the contract been performed." *Shumye*, 555 F.Supp.2d at 1024 (citation omitted). To determine the appropriate damages, courts compare the plaintiff's annual income for the particular years at issue, rather than the aggregate income for the entire period, against the 125% poverty threshold for each particular year. *Id.* at 1024–25. A sponsor may also be held liable for legal

fees and other costs of collection. *See* 8 U.S.C. § 1183a(c).

### *i. Alimony and Child Support*

 Both parties agree that the plaintiff's alimony should offset the defendant's obligation under the affidavit. The defendant also argues that his child support payments to the plaintiff should further reduce that obligation. No federal court has yet examined whether child support payments should mitigate a defendant's contractual obligation under the affidavit. Considering the underlying purpose of child support payments, the court concludes they do not.

In Maryland, child support obligations are determined by considering the needs of the child and apportioning the expense of those needs based on the parents' income. *See Voishan v. Palma,* 327 Md. 318, 609 A.2d 319, 326 (1992). The purpose is to ensure children "receive the same proportion of parental income, and thereby enjoy the standard of living, [they] would have experienced had the[ir] ... parents remained together." *Id.* at 321. The purpose is not, as the defendant suggests, to benefit the other parent. Moreover, the federal government does not consider child support, as it does alimony, to be part of an individual's gross income for tax purposes, *see* 26 U.S.C. § 71(a),(c), and the defendant offers no evidence that Congress intended to broaden its definition of income to include child support in this context.

Further, child support is distinguishable from the housing subsidies and educational grants found to constitute mitigating income in *Shumye,* 555 F.Supp.2d at 1026. Those benefits are designed to supplement the beneficiary's income to pay for specific services—housing and education—while child support is designed to meet the needs of the child. As discussed above, child support is a financial obligation to one's non-custodial child, not a monetary benefit to the other parent. In light of these policy considerations, the court concludes that child support payments do not offset the defendant's obligation under the affidavit.[2]

### *ii. Gifts*

 The parties also dispute whether cash gifts should mitigate the defendant's contractual obligation under the affidavit. The court need not rule definitively on whether gifts could ever offset a defendant's obligation or who carries the burden to prove the existence *vel non* of such gifts, because the gifts in this case were *de minimis* and there is no sufficient evidence available to attribute the gifts to any specific year.[3] Ms. Younis admits that she received occasional gifts of one hundred or two hundred dollars from friends and received small donations ranging from $20 to $50 from members of her mosque when she needed money to support herself after separating from Mr. Farooqi. The deposition transcript and interrogatories provided to the court, however, do not indicate that the plaintiff was asked for the particular year or years in which these gifts were received, nor does it appear that the plaintiff would be able to provide any additional

---

**2.** The defendant's contention that the plaintiff will be doubly compensated because the state court did not factor the defendant's obligation under the affidavit into the child custody award has no bearing on whether child custody should be considered "income" in this context. He can pursue that matter in state court by seeking to modify the child support award.

**3.** The court notes that, like child support, gifts are not taxable income. *See* 26 U.S.C. § 102(a).

information regarding these gifts, likely due to their *de minimis* nature.

As discussed above, the court examines Ms. Younis's annual, rather than aggregate, income to determine Mr. Farooqi's obligation under the affidavit. *See Shumye,* 555 F.Supp.2d at 1024. Thus, there must be some evidence of the particular years in which the plaintiff received gifts for the court to even consider offsetting the defendant's obligation. While Mr. Farooqi speculates that Ms. Younis has failed to provide all information related to these gifts, he offers no evidence to support this allegation. In fact, Ms. Younis provided three names of individuals who belong to her mosque or attended her wedding or both that gave her money. Mr. Farooqi had ample opportunity to investigate this issue, and there is no evidence that he has done so. In short, there is no basis to find that the plaintiff's occasional receipt of *de minimis* cash gifts during a time of great financial hardship following her separation from the defendant should offset his financial obligation to her.

### iii. Wages and Duty to Mitigate

■ The parties do not dispute that any wages earned by the plaintiff during the years in question should mitigate the defendant's obligation under the affidavit. At the behest of the defendant, the plaintiff provided in her papers the amount of wages she earned during the years in question. The figures supplied by the plaintiff, which amount to $650 in 2007 and $473 in 2008,[4] are not disputed by the defendant.

Mr. Farooqi maintains, however, that Ms. Younis has not done enough to mitigate her damages by failing to seek full-time employment. In response, Ms. Younis has presented evidence that she worked at a local pharmacy after the separation but was replaced by applicants with more education, that she unsuccessfully applied for two jobs with Wal–Mart and one job at Super Fresh during 2007, and that, at the time of her deposition, she had a pending application to work at Panera Bread. Moreover, Ms. Younis submitted a report from a vocational expert indicating that, due to the plaintiff's limited education and experience, she will likely have a difficult time finding full-time employment. The defendant does not dispute this evidence.

Assuming the plaintiff has an obligation to mitigate her damages by seeking employment, she need not apply for every available job in order to mitigate her losses; she need only make reasonable efforts. *See Sergeant Co. v. Pickett,* 285 Md. 186, 401 A.2d 651, 660 (1979). It is the defendant's burden to prove that the plaintiff did not make reasonable efforts, *see id.,* and he has failed to produce any evidence that she failed to do so. Ms. Younis's job search, her willingness to volunteer, and her plans to attend school evidence her commitment "to become an active member of American society," as the defendant contends she must so commit herself, and not "simply wait to collect additional monies from Mr. Farooqi" (Def.s' Summ. J. Mem. at 9–10). Mr. Farooqi contractually agreed to support the plaintiff at 125% of the federal poverty level, and he cannot now avoid that obligation because his immigrant ex-wife— who has no driver's license and only limited education, experience, and command of the English language, in addition to the responsibility of caring for a young child—

---

**4.** The plaintiff contends she worked upwards of thirteen weeks at a local pharmacy for ten hours a week at a rate of $5 per hour in 2007, which amounts to $650 of wages, and that from February 2008 through the end of that year she earned approximately $43 per month working at a local clothing store, which amounts to $473.

has been unable to find full-time, paid employment within a couple of years of their divorce.[5]

## B. Plaintiff's Motion for Summary Judgment

As discussed above, Mr. Farooqi's child support payments do not offset his obligation under the affidavit, and he has failed to raise a genuine issue for trial that Ms. Younis failed to act reasonably to mitigate her losses. As to the cash gifts, Mr. Farooqi has provided no evidence, such as bank deposits or affidavits from potential witnesses, from which a fact finder could infer that in a particular year Ms. Younis received additional income that should offset his contractual obligation. *See Shumye*, 555 F.Supp.2d at 1027. Therefore, the court will grant the plaintiff's motion for summary judgment.

## C. Remedy

Pursuant to the Federal Register, for a household size of one person, the poverty guidelines for 2006 are $9,800;[6] for 2007 are $10,210;[7] and for 2008 are $10,400.[8] The following figures represent 125% of these federal poverty levels, calculated by a pro rata amount for 2006, based on the parties' separation on January 27, 2006, minus the offsets for alimony and wages received, as discussed above:

2006: $12,250 - ($12,250 * 26/365) = $11,377.40

2007: $12,762.50 - ($450 * 12) - $650 = $6,712.50

2008: $13,000 - ($450 + ($850 * 11)) - $473 = $2,727 [9]

**Total:** $11,377.40 + $6,712.50 + $2,727 = $20,816.90

Based on the above figures, judgment will be entered against the defendant in the amount of $20,816.90 for past support accumulated between the date of the separation and through the end of 2008. The court notes that the defendant is obligated to sponsor the plaintiff at 125% of the federal poverty level until his obligation expires by law. Moreover, as stated in the affidavit, a sponsor "may also be held liable for costs of collection, including attorney fees." (*See* Affidavit, Def's. Mot. for Summ. J. Ex. A, at 6.) The plaintiff may file an appropriate motion and affidavit demonstrating her reasonable attorneys' fees and costs within 21 days after the date of the final order, which will be issued after consideration of any corrections to the court's calculations suggested by counsel by February 20, 2009.

---

5. The court notes, moreover, that in the event the plaintiff is unable or even unwilling to attain full-time employment, that does not necessarily relieve the defendant of his liability under the affidavit, as these are not terminating conditions, *see* 8 U.S.C. § 1183a. The affidavit is enforceable by the government as well as the alien, and the purpose of the affidavit—to ensure that an immigrant does not become a public charge—suggests that in such a scenario, the sponsor's support is more likely necessary to keep the immigrant from seeking public assistance.

6. Annual Update of the HHS Poverty Guidelines, 71 Fed.Reg. 3848 (Jan. 24, 2006).

7. Annual Update of the HHS Poverty Guidelines, 72 Fed.Reg. 3147 (Jan. 24, 2007).

8. Annual Update of the HHS Poverty Guidelines, 73 Fed.Reg. 3971 (Jan. 23, 2008).

9. The last submission in this case was the plaintiff's reply, filed October 16, 2008. The court assumed, for the purposes of calculating the 2008 figures, that there were no changes in alimony or wages from the date of the final submission through the end of 2008. The parties may have until February 20, 2009 to suggest any appropriate corrections to the court's calculations.