**Yvonne A. LOVE, Appellant**

v.

**James C. LOVE, Appellee.**

Superior Court of Pennsylvania.

Argued March 23, 2011.
Filed Dec. 14, 2011.

---

Deborah L. Culhane and A. Lauren Carpenter, Philadelphia, for appellant.

James C. Love, appellee, pro se.

BEFORE: BOWES, ALLEN, and FREEDBERG, JJ.

OPINION BY BOWES, J.:

Yvonne A. Love ("Wife") appeals from the allocated support order entered on June 15, 2010, wherein the trial court fashioned a spousal support award without applying James C. Love's ("Husband") commitment to support Wife in an amount equal to 125 percent of the Federal Poverty Guidelines pursuant to the Form I–864 affidavit of support ("Affidavit") that he filed with the Department of Homeland Security in order to secure her status as a permanent resident of the United States. We reverse and remand for further proceedings.[1]

1. As there was no divorce pending when the allocated support order was entered, the or-

Wife is a German citizen. Her relationship with Husband bore a single child during 2003. Wife married Husband on October 29, 2005. In order to facilitate Wife's lawful immigration status and permit her to become a permanent resident of the United States, Husband executed an Affidavit pursuant to § 213A of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1183(a), on March 4, 2008. The Affidavit required Husband to sponsor Wife and provide her with a minimum level of financial support equal to 125 percent of the Federal Poverty guidelines. The parties separated during May 2009. Wife filed a complaint for child support on June 9, 2009, and amended the complaint on September 1, 2009, to request spousal support.

■ The trial court summarized the support proceedings as follows:

The matter was heard by a Support Master, who submitted a [proposed] order on October 5, 2009, pursuant to which Appellee Husband ("Husband") was to pay $587.68 for the support of the child and $420.68 per month in spousal support, for a total support obligation of $1008.36 per month. An Immigration Affidavit of Support, form I–864, was listed as one of Wife's exhibits in the Master's Report. The Report noted that Wife testified Husband signed said Affidavit, but no other reference was made to it in the Report. Findings of fact, conclusion of law and support calculations were based on the support guideline schedule set forth in Rule 1910.[16]–3, Pa.R.Civ.P.

Husband filed exceptions to the purposed order on October 20, 2009, which were heard by this court on January 15, 2010. The exceptions were granted in part and the matter was remanded to the Support Master to impute an earning capacity to Wife and to submit a new proposed order without additional testimony. A revised proposed order was submitted on February 4, 2010, pursuant to which Husband was to pay $533.38 for the support of the child and $45.34 in spousal support. Wife filed exceptions on February 24, 2010, which were heard on June 15, 2010. Wife challenged the calculation of Husband's income, the computation of an earning capacity for Wife, the application of a multi-family reduction for Husband, the omission of child care costs and the failure to consider the I–864 Affidavit under section 213A of the Immigration and Nationality Act.[2] This court granted Wife's exceptions, directing that Husband pay $622.00 per month for the support of one child and $323.00 per month in spousal support, for a total support obligation of $945.00 which was only $63.00 less than the original obligation. In granting Wife's exceptions, the earning capacity imputed to Wife was reduced by the court and a correction was made to Husband's income amount. The I–864 Affidavit was not applied in setting the support obligation, based on the findings

der is not interlocutory. *See Hoffman v. Hoffman*, 762 A.2d 766, 769 (Pa.Super.2000) (*en banc*) ("[A] spousal support order is appealable where no divorce action was pending at the time the support order was entered.").

2. Although the trial court addressed the merits of Wife's assertion, it made the passing observation in its Rule 1925(a) opinion that Wife's issue "may very well be" waived because "she failed to raise that issue by way of exceptions to the master's first proposed order, which also was not based on the Affidavit." Trial Court Opinion, 8/30/10, at 9–10. Herein, Wife filed a timely exception to the second proposed order invoking the Affidavit while she was still an aggrieved party and she presented her claim to the trial court during an evidentiary hearing. As the trial court had an opportunity to correct the asserted error before entering its final support order, we decline to find waiver.

that Pa. Support Guidelines are controlling[,] N.T. 6/15/10, pp. 21–22[,] and that Wife's remedy lay in federal court. Trial Court Opinion, 8/30/10, at 2–3. This timely appeal followed. Wife complied with the trial court's order directing her to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

Although Wife presents three questions for our review, she only preserved one issue in her rule 1925(b) statement, which we rephrase for clarity and ease of disposition as follows: Whether the trial court erred in fashioning the support order without regard for Husband's contractual obligations pursuant the INA Affidavit. See Appellant's brief at 3. The remaining issues Appellant seeks to assert on appeal are waived. *Commonwealth v. Lord,* 553 Pa. 415, 719 A.2d 306 (1998) (issues not raised in the Rule 1925(b) statement are waived).

In spousal support cases, our standard of review requires that we

> determine whether the trial court has, in deciding the case, abused its discretion; that is, [not whether the trial court has merely committed] an error of judgment, but [rather whether the trial court] has overridden or misapplied the law, or has exercised judgment which is manifestly unreasonable, or the product of partiality, prejudice, bias or ill-will as demonstrated by the evidence of record.

*Dudas v. Pietrzykowski,* 578 Pa. 20, 25, 849 A.2d 582, 585 (2004) (citation omitted).

*Lawson v. Lawson,* 940 A.2d 444, 447 (Pa.Super.2007).

■■■ Wife assails the trial court's refusal to enforce the INA Affidavit during the support proceedings. The Affidavit imposed a contractual obligation upon Husband to support Wife at or above 125 percent of the Federal Poverty Guidelines applicable to the size of her household. The contractual obligation, which is independent of spousal support and survives divorce,[3] is enforceable by Wife, the federal government, any state government, and any governmental agency that provides Wife a means-tested public benefit. *See* 8 U.S.C. § 1183a(a)(1)(B). Moreover, Wife may enforce the Affidavit's financial obligation "in any appropriate court. . . ." 8 U.S.C. § 1183a(e).

■■■ Relying upon its interpretation of our Supreme Court's holding in *Nicholson v. Combs,* 550 Pa. 23, 703 A.2d 407 (1997), the trial court refused to enforce the Affidavit during the support proceedings because essentially it was an agreement between the parties. The court opined, "spousal support orders are afforded statutory process and enforcement . . . [but] . . . "[b]y way of contrast, agreements are not afforded the enforcement tools of the court[.]" Trial Court Opinion, 8/30/10, at 8. Accordingly, the trial court reasoned that the Domestic Relations Code and the concomitant support guidelines foreclosed it from considering Husband's obligations pursuant to the Affidavit in formulating the support order. The trial court concluded that Wife should seek to enforce Husband's obligation as a separate civil matter. For the following reasons, we find that the trial court erred in failing to apply Pa.R.C.P. 1910.16–5 in order to enforce the baseline amount of support established in the Affidavit as a deviation from the presumed guideline amount.

The trial court's reliance upon *Nicholson, supra* is inapposite. *Nicholson* addressed whether a child support provision

---

**3.** The Affidavit identifies five specific events that would terminate the support obligation; *i.e.* Wife's citizenship, death, deportation, adjustment of immigrant status, or attainment of forty quarters of coverage under the Social Security Act. *See* 8 U.S.C. § 1183a (a)(2)(3).

contained in a property settlement agreement that was incorporated, but not merged, into a divorce decree prior to the effective date of 23 Pa.C.S. § 3105, may be subject to a reduction by the trial court. In holding that such a provision is not subject to modification, the Supreme Court reasoned that the property settlement agreement and a court-imposed child support order establishing the same support obligation can coexist and that "the existence of a proceeding on the support order in the family court **does not preclude** a payee from initiating a separate civil action based on a support agreement either for compensatory damages or for specific performance." *Id.* at 417 (emphasis added). Thus, contrary to the trial court's interpretation, the *Nicholson* Court did not hold that a party seeking to enforce an agreement must file a separate cause of action. Instead, the Supreme Court reasoned that a payee is permitted to institute a separate civil action and it outlined the potential benefits of that decision. *Id.* While we recognize Wife's right to initiate a separate lawsuit against Husband if she desires, we do not conclude that she is precluded from enforcing the Affidavit in the subject support proceedings.

■ Further, the Supreme Court's discussion in *Nicholson* addressing the interplay between a property settlement agreement and a child support order is not instructive to our decision in the case at bar. The Supreme Court decided *Nicholson* pursuant to the law before the 1988 amendments to the Divorce Code. Prior to those amendments, case law prohibited the downward deviation of child support obligations included in property settlement agreements that were incorporated but not merged into the divorce decree. *Id.* at 411. However, a trial court maintained authority to decrease a child support order based upon changed circumstances. Thus, in deciding the pertinent issue in *Nicholson*, the Supreme Court distinguished between the procedure to enforce an agreement and the procedure to enforce a child support order. *Id.* at 414. In contrast to the state of the law that formed the basis for the *Nicholson* decision, the case *sub judice* must be decided pursuant to current law, which clearly permits parties to a property settlement agreement to enforce the terms of their agreement in the domestic relations court. *See* 23 Pa.C.S. § 3105(a).

Section 3105(a) permits either party to a property settlement agreement to enforce the agreement in the domestic relations court regardless of whether the agreement was merged or incorporated into the divorce decree. That statute provides, in pertinent part, as follows:

§ 3105. **Effect of agreement between parties**

**(a) Enforcement.**—A party to an agreement regarding matters within the jurisdiction of the court under this part, whether or not the agreement has been merged or incorporated into the decree, may utilize a remedy or sanction set forth in this part to enforce the agreement **to the same extent as though the agreement had been an order of the court** except as provided to the contrary in the agreement.

23 Pa.C.S. § 3105(a) (emphasis added). Thus, the trial court's reliance upon *Nicholson* is unpersuasive. Simply stated, since the current state of the law permits parties to enforce support provisions in property settlement agreements as if they were court orders, the portion of the *Nicholson* Court's rationale distinguishing between the enforcement procedures for support orders and agreements is no longer germane. *See Nicholson, supra* at 414.

■ Moreover, it was error for the trial court to hold that Wife's sole remedy would be to initiate a separate proceeding in order to enforce Husband's support obli-

gation. As we noted *supra*, neither our Supreme Court's precise holding in *Nicholson* nor its underlying reasoning would preclude Wife from presenting evidence concerning Husband's support commitment pursuant to the Affidavit in order to assist the trial court in calculating Husband's court-ordered support obligation.

Herein, the trial court could have, but failed to, utilize Pa.R.C.P.1910.16–5(b)(1) and (9)[4] to enforce the Affidavit as an allowable deviation from the support guidelines. Pursuant to Rule 1910.16–5, the trial court is permitted to fashion a support order that deviates from the support guidelines as long it identifies the guideline amount and specifies the reasons for the deviation. As Wife argues convincingly in her brief, Husband's uncontested commitment to support her at a minimum amount equal to 125 percent of the Federal Poverty Guidelines is tantamount to an exceptional circumstance that would warrant a deviation from the guideline amount.

▪ For all of the foregoing reasons, we reject the trial court's conclusion that Wife was precluded from enforcing the affidavit of support during the support proceedings and its attendant holding that Wife is required to initiate a separate civil action based upon the Affidavit seeking either compensatory damages or specific per-formance. We conclude that the Affidavit memorializing Husband's commitment to support Wife at a minimum baseline level was relevant evidence upon which the trial court was authorized to deviate from the support guidelines. Hence, we reverse the support order and direct the trial court to utilize Rule 1910.16–5(a) to fashion an award that reflects Husband's obligation consistent with the affidavit of support.

Upon remand, we direct the trial court to employ the Superior Court of New Jersey's application of the Affidavit in *Naik v. Naik*, 399 N.J.Super. 390, 944 A.2d 713 (2008). Under that design, the sponsor's obligation to provide additional support to the immigrant spouse pursuant to the Affidavit would not be triggered unless the immigrant spouse's income from all available sources of support falls below 125 percent of the Federal Poverty Guidelines. *Id.* at 717–718. "If the sponsored immigrant's sources of support exceed this level, then no Form I–864EZ support is mandated by the INA." *Id.* at 718. In addition, once triggered, the Affidavit's support obligation is limited to rectifying the deficiency between the sponsored immigrant's income and the appropriate guideline amount. *Id.* Other jurisdictions have taken the *Naik* Court's lead and adopted this perspective in reported cases. *E.g., Younis v. Farooqi*, 597

4. Rule 1910.16–5 provides as follows:

**Support Guidelines. Deviation**
(a) Deviation. If the amount of support deviates from the amount of support determined by the guidelines, the trier of fact shall specify, in writing or on the record, the guideline amount of support, and the reasons for, and findings of fact justifying, the amount of the deviation.
. . . .
(b) Factors. In deciding whether to deviate from the amount of support determined by the guidelines, the trier of fact shall consider:
(1) unusual needs and unusual fixed obligations;

(2) other support obligations of the parties;
(3) other income in the household;
(4) ages of the children;
(5) the relative assets and liabilities of the parties;
(6) medical expenses not covered by insurance;
(7) standard of living of the parties and their children;
(8) in a spousal support or alimony pendente lite case, the duration of the marriage from the date of marriage to the date of final separation; and
(9) other relevant and appropriate factors, including the best interests of the child or children.

F.Supp.2d 552 (D.Md.2009); *Shumye v. Felleke*, 555 F.Supp.2d 1020 (N.D.Cal. 2008); *Barnett v. Barnett*, 238 P.3d 594 (Alaska 2010).

After the trial court concluded that Wife's remedy rested in a separate civil action, it proposed the following alternative rationale,

> It is the opinion of this court that the final order entered, inclusive of Wife's earning capacity of $9,740, child support in the amount of $7,464 and spousal support in the amount of $3,876 totaling $21,090 per annum exceeds the poverty guidelines for a household of two. When the contract principle of an obligation to mitigate damages is considered, imputing an earning capacity to Wife would not be out of the question in enforcing a contract.

Trial Court Opinion, 8/30/10, at 10.

Thus, the court concluded that regardless of whether it applied Husband's contractual obligation, no relief was due in this case because Wife's sources of support, including the $9,740 assessed earning capacity, exceeded 125 percent of the Federal Poverty Guidelines for a two-person household. As discussed below, we disagree with the trial court's perspective.

■ As it relates to the trial court's decision to include Wife's earning capacity in its calculation, the trial court's decision conflicts with both the overarching purpose of the Affidavit and the precise wording of the support obligation.[5] It is abundantly clear that the purpose of the Affidavit is to prevent an immigrant spouse from becoming a public charge.[6] *See* 8 U.S.C. § 1183a (a)(1)(A) (affidavit of support used to establish that alien is not excludable as public charge under section 1182(a)(4)); *Iannuzzelli v. Lovett*, 981 So.2d 557, 559 n. 1 (Fla.App.Ct.2008) ("The provision was added to the immigration statutes in 1996 in an effort to assure that immigrants would not become a 'public charge' eligible for various government benefits. The affiant/sponsor assures the government and the sponsored immigrant that the immigrant's income will be sufficient to preclude eligibility for those benefits."). In fact, the principal consideration in this section of the INA is the burden that impoverished immigrants might have on our welfare rolls. To high-

---

**5.** While the *Naik* Court acknowledged the expectation that sponsored immigrants obtain employment commensurate with their abilities, the court's formulation of an immigrant's means did not include the sponsored immigrant's theoretical earning capacity. Instead, the court identified "income, assets and other sources of support," such as alimony, child support, and equitable distribution of income-producing assets as appropriate resources to consider. *Naik, supra* at 717–718. Among the jurisdictions that have adopted the *Naik* Court's general applications of the Affidavit in reported cases, there is no consensus regarding whether earning capacity should be included in the calculation. *Compare Younis, supra* (entering summary judgment in favor of immigrant spouse without fashioning setoff for earning capacity); *Shumye, supra* at 1028 (court did not assess immigrant spouse's earning capacity in determining that sponsor was in breach of Affidavit's support obli-

gations); *with Barnett, supra* at 598–599 (significant earning capacity of $18,000 to $28,000 per year precluded immigrant spouse from invoking Affidavit); *Wenfang Liu v. Mund*, 748 F.Supp.2d 958, 965 n. 7 (W.D.Wis. 2010) (noting in *dicta* that imputed earning capacity might be applied as set off to counter immigrant's continued and unexplained inability to obtain employment).

**6.** For a historical perspective of the relationship between immigration laws and means-tested public benefit programs and a scholarly discussion addressing the inadmissibility of immigrants who are likely to become public charges, see Michael J. Sheridan, *The New Affidavit of Support and Other 1996 Amendments to Immigration and Welfare Provisions Designed to Prevent Aliens from Becoming Public Charges*, 31 Creighton L.Rev. 741 (1998).

light this concern, we point out that in addition to support actions like the case at bar, the statute permits agencies to pursue reimbursement from sponsors for means-tested benefits that were awarded to immigrant spouses. *See* 8 U.S.C. § 1183a(a)(1)(B), and (b) (providing that Affidavit of Support "is legally enforceable against the sponsor by the sponsored alien, [Federal, State, or local government] or by any other entity that provides any means-tested public benefit" and outlining procedure to reimburse government or agency for means-tested public benefit). Hence, suffice it to say that limiting the public burden by keeping immigrant spouses out of need-based public entitlement programs is the polestar of § 1183a.

■ In addition, the Affidavit specifically delineates that executing the document obligates the sponsor to "[p]rovide the intending immigrant any support necessary to maintain him or her at an **income** that is at least 125 percent of the Federal Poverty Guidelines...." Wife's Memorandum of Law in Support of Exceptions, 2/1/10, at Exhibit A, Part 8 (emphasis added). While the statute does not define the term "income," the corresponding section of the Code of Federal Regulations ("CFR") defines income narrowly. *See* 8 CFR § 213a.1 [7] Likewise, the Pennsylvania Domestic Relations Code utilizes the following narrow definition of the term.

"Income." Includes compensation for services, including, but not limited to, wages, salaries, bonuses, fees, compensation in kind, commissions and similar items; income derived from business; gains derived from dealings in property; interest; rents; royalties; dividends; annuities; income from life insurance and endowment contracts; all forms of retirement; pensions; income from discharge of indebtedness; distributive share of partnership gross income; income in respect of a decedent; income from an interest in an estate or trust; military retirement benefits; railroad employment retirement benefits; social security benefits; temporary and permanent disability benefits; workers' compensation; unemployment compensation; other entitlements to money or lump sum awards, without regard to source, including lottery winnings; income tax refunds; insurance compensation or settlements; awards or verdicts; and any form of payment due to and collectible by an individual regardless of source.

23 Pa.C.S. § 4302. By these representative definitions, income clearly affords a tangible benefit to the recipient.

■ In contrast to the actual gains associated with income, earning capacity is a tool designed to assist the trial court with, among other things, fashioning child support and spousal support awards. Pursuant to Pa.R.C.P.1910.16–2, trial courts are empowered to assess an earning capacity in a support action where a party has "willfully failed to obtain or maintain appropriate employment...." While earning capacity is an entirely appropriate consid-

---

7. The precise definition is as follows:

As used in this part, the term:

....

Income means an individual's total income (adjusted gross income for those who file IRS Form 1040EZ) for purposes of the individual's U.S. Federal income tax liability, including a joint income tax return (e.g., line 22 on the 2004 IRS Form 1040, line 15 on the 2004 IRS Form 1040A, or line 4 on the 2004 IRS Form 1040EZ or the corresponding line on any future revision of these IRS Forms).

Although the definition does not specifically address what constitutes income in relation to a sponsored immigrant, the narrow definition that is provided in the regulation suggests that earning capacity would not be subsumed under the term.

eration when calculating guideline spousal support obligations, once the guideline amount is computed, the figure representing an immigrant spouse's earning capacity should not be reapplied to offset the sponsor's financial obligations under the Affidavit. We conclude that including a theoretical earning capacity in this calculation vitiates the purpose of the sponsorship obligation since the imputed figure does not rectify the need for an otherwise impoverished immigrant to rely upon means-tested public benefits programs to satisfy his or her basic needs. Unlike actual income, earning capacity will never provide shelter, sustenance, or minimum comforts to a destitute immigrant.

Invoking Wife's supposed obligation to mitigate damages, the trial court artificially inflated Wife's resources by including an earning capacity in its calculation and determined that Wife's income exceeded the threshold amount. Although the Affidavit does not create a duty for Wife to mitigate her damages associated with Husband's breach, we acknowledge Wife's common law duty to mitigate.

 Nevertheless, Wife's alleged failure to mitigate her damages is, at best, an affirmative defense for which Husband bears the burden of raising and proving. *See Ecksel v. Orleans Constr. Co.*, 360 Pa.Super. 119, 519 A.2d 1021, 1028 (1987) ("A party who suffers a loss has a duty to make a reasonable attempt to mitigate damages, but the burden is on the party who breaches the contract to show how further loss could have been avoided through the reasonable efforts of the injured party."); *Koppers Co., Inc. v. Aetna Cas. and Sur. Co.*, 98 F.3d 1440, 1448 (3d Cir.1996) (applying Pennsylvania law, "Mitigation is an affirmative defense, so the burden of proving a failure to mitigate is on the defendant").

 Herein, however, Husband never asserted the defense of Wife's failure to mitigate the damages, and therefore never satisfied his burden of proving that Wife failed to take reasonable efforts to obtain employment or maintain self-sufficiency. *See Bafile v. Borough of Muncy*, 527 Pa. 25, 588 A.2d 462, 464 (1991) (duty to mitigate requires only reasonable efforts to mitigate). Unlike the trial court which raised and applied the mitigation principle *sua sponte* in support of its alternative rationale, absent an assertion from Husband, we decline to invoke this affirmative defense on Husband's behalf as a ground to deny relief.

 The theoretical earning capacity that the trial court assessed in this case accounted for approximately forty-six percent of Wife's annual "income," as the trial court elected to apply the term. Since the trial court's formulation of Wife's financial resources ran contrary to the purpose and intent of the Affidavit's sponsorship requirements, we reject the trial court's perspective. Instead, mindful of the principal purpose of the statute and the precise use of the term "income," we conclude that it is inappropriate to include an immigrant's imputed earning capacity in the calculation to determine if a Rule 1910.16–5 deviation from the support guidelines is warranted to account for the sponsor's obligation under the Affidavit. *See Younis, supra* at 557 n. 5 ("the purpose of the affidavit-to ensure that an immigrant does not become a public charge-suggests that in … a scenario [where the immigrant spouse is unable or unwilling to attain full-time employment], the sponsor's support is more likely necessary to keep the immigrant from seeking public assistance.").

 Accordingly, for all of the foregoing reasons, we hold that when a trial court is confronted with determining whether an immigrant spouse's income exceeds 125 percent of the Federal Poverty Guidelines, the trial court's inquiry should

concentrate upon the reality of the immigrant spouse's **actual** income from all sources of support without inflating that figure by adding theoretical earning capacity to the calculation.

▇▇ Finally, we observe that the trial court made several errors in determining Wife's earning capacity and applying that fiction to the support guidelines. For example, while the trial court envisioned imputing an earning capacity of $7.50 per hour for a thirty-hour work week, the trial court actually assessed a monthly earning capacity of $780.00, which, under the trial court's formula, would equate to thirty-two and one-half hours of pay per week.[8] *See* Trial Court Opinion, 8/30/10, at 7 n. 2; N.T. 6/15/10, at 24–26. Had the trial court employed the correct calculation, Wife's monthly earning capacity would have been sixty dollars less. The result of the trial court's miscalculation is a $720.00 increase to Wife's annual earning capacity (sixty dollars per month for twelve months). This error reappears throughout the guideline support calculation, and it affected Wife's award of spousal support and her share of the combined child support obligation.

Next, assuming the trial court correctly assessed Wife's earning capacity, the court made two wholly independent errors in calculating the parties' respective child support obligations which ultimately affects Wife's spousal support. Pursuant to Pa.R.C.P. 1910.16–4(a), the trial court was required to combine Husband's and Wife's total monthly income as a preliminary step to establish the basic child support obligation. Adding the inaccurate earning capacity that the trial court assessed to Wife ($780.00) to Husband's monthly income ($2,833.00), the trial court miscalculated the combined net monthly income as $3,631 instead of $3,613.[9] N.T., 6/15/10, at 26. Moreover, the trial court utilized outdated support guidelines in its calculation. The current support guidelines became effective one month before the support hearing. *See* Pa.R.C.P.1910.16–3 (effective May 12, 2010). Using the inaccurate figures and the outdated schedule, the trial court entered a child support award obliging Husband to pay $622.00 per month child support. Pursuant to the formula provided in Rule 1910.16–4, Husband's monthly child support obligation is used to calculate Wife's spousal support. Since the trial court's child support and spousal support awards were miscalculated, the court's concomitant finding that Wife's annual income totals $21,090, inclusive of earning capacity, is also incorrect. Therefore, we also direct the trial court to remedy the foregoing errors, fashion accurate support awards, and determine Wife's annual income, exclusive of earning capacity, based upon correct figures.

Order reversed. Matter remanded. Jurisdiction relinquished.

Judge FREEDBERG files a Dissenting Opinion.

## DISSENTING OPINION BY FREEDBERG, J.:

Appellant, Yvonne A. Love ("Wife"), appeals from the support order entered by the Philadelphia County Court of Common Pleas against Appellee, James C. Love

---

8. The trial court purported that $7.50 per hour for a thirty-hour-work-week would total $979.00 per month, which the court multiplied by 80% to assess an earning capacity of $780.00. In reality, however, $7.50 per hour for a thirty-hour-work-week equals $900.00 per month, 80% of which totals $720.00.

9. Using the correct earning capacity figures to determine Wife's net monthly income, the correct combined net monthly income is $3,553.

("Husband"). Wife asks us to determine whether the trial court erred by refusing to enforce the terms of an Affidavit of Support that Husband filed with the Department of Homeland Security U.S. Citizenship and Immigration Services, in which he agreed to provide Wife with support in an amount equal to 125% of the Federal Poverty Guidelines. I affirm.

Section 213A of the Immigration and Nationality Act, 8 U.S.C. § 1183(a), provides that an individual who sponsors an immigrant as a permanent resident must execute an affidavit stating that the sponsor has an income of at least 125% of the federal poverty guideline for his household size. The sponsor must also agree to support the immigrant at a level that will maintain the immigrant's income at 125% or more of the federal poverty guideline. The Form I–864 Affidavit of Support contains, *inter alia*, the following provisions:

Part 8 Sponsor's Contract

If you sign a Form I–864 on behalf of any person (called the "intending immigrant") who is applying for an immigrant visa or for adjustment of status to a permanent resident, and that intending immigrant submits the Form I–864 to the U.S. Government with his or her application for an immigrant visa or adjustment of status, under section 213A of the Immigration and Nationality Act these actions create a contract between you and the U.S. Government. The intending immigrant's becoming a permanent resident is the "consideration" for the contract.

Under this contract, you agree that, in deciding whether the intending immigrant can establish that he or she is not inadmissible to the United States as an alien likely to become a public charge, the U.S. Government can consider your income and assets to be available for the support of the intending immigrant.

. . .

If you do not provide sufficient support to the person who becomes a permanent resident based on the Form I–864 that you signed, that person may sue you for this support.

. . .

Your obligations under a Form I–864 will end if the person who becomes a permanent resident based on a Form I–864 that you signed:

- Becomes a U.S. citizen.

- Has worked, or can be credited with 40 quarters of coverage under the Social Security Act.

- No longer has lawful permanent resident status, and has departed the United States;

- Becomes subject to removal, but applies for and obtains in removal proceedings a new grant of adjustment of status based on a new affidavit of support, if one is required, or

- Dies

Note that divorce does not terminate your obligations under this Form I–864.

The Affidavit "is legally enforceable against the sponsor by the sponsored alien, the Federal Government, any State (or any political subdivision of such State), or by any other entity that provides any means-tested public benefit. . . ." 8 U.S.C.A. § 1183a(a)(1)(B). "An action to enforce an affidavit of support executed under subsection (a) of this section may be brought against the sponsor in any appropriate court by a sponsored alien, with respect to financial support." 8 U.S.C.A. § 1183(a)(e).

In Pennsylvania, support obligations are determined according to statewide guidelines. Section 4322 of the Domestic Relations Code provides in relevant part:

§ 4322 Support Guideline

(a) Statewide Guideline. Child and spousal support shall be awarded

pursuant to a Statewide guideline as established by general rule by the Supreme Court, so that persons similarly situated shall be treated similarly. The guideline shall be based upon the reasonable needs of the child or spouse seeking support and the ability of the obligor to provide support.

(b) Rebuttable Presumption. There shall be a rebuttable presumption in any judicial or expedited process, that the amount of the award which would result from the application of such guideline is the correct amount of support to be awarded.

23 Pa.C.S. § 4322. "The support guideline amount is presumed to be ... a payment which the obligor can reasonably afford." *Ball v. Minnick,* 538 Pa. 441, 648 A.2d 1192, 1197 (1994). The support guidelines set forth the amount of support based on the net monthly incomes of each of the parties. Pa.R.C.P.1910.16–1(a)(1). Accordingly, a support order based on the guideline amount does not impose an obligation that is beyond the obligor's reasonable ability to comply.

The issue Wife raises is whether an INA Affidavit of Support affects the amount an obligor owes under a support order when the support guideline amount is less than 125% of the Federal Poverty Guidelines. Support orders are vested with characteristics that make them unique among civil orders. Comparing support orders to support agreements, the Supreme Court in *Nicholson v. Combs,* 550 Pa. 23, 703 A.2d 407 (1997)[1] noted:

A support or alimony order is a creation of statute and an incident of the marriage which is enforceable by operation of law. Proceedings relative to such orders contain due process requirements, evidentiary findings and involve

scrutiny by the court as to their validity.... In return for this closely proscribed legal proceeding with its attendant safeguards and judicial findings, the legislature has extended the power to bring about compliance by granting courts the right to attach property and wages and to incarcerate willfully delinquent obligors.

*Id.* at 414 (citation omitted). Enforcement of agreements is significantly more restricted.

Since they are not court orders, the extraordinary powers flowing from a court are not available. To jail a person for failing to pay on his agreement (which created a debt) is prohibited by our constitutions, state and federal, as imprisonment for debt.

*Id.* (citation omitted). *Nicholson* further noted that a civil remedy is available to a party for enforcement of a support agreement:

... [T]he existence of a proceeding on the support order in the family court does not preclude a payee from initiating a *separate* civil action based on a support agreement either for compensatory damages or for specific performance. In an action at law, the payee may recover breach of contract damages.... The payee may also seek relief in equity through an order of specific performance directing the payor to comply with his or her future support obligations under the agreement.

*Id.* at 417. Consistent with *Nicholson,* the trial court properly concluded that "Wife's remedy would be to initiate a separate civil action based on the Affidavit either for compensatory damages or for specific performance for breach of contract." Trial Court Opinion, at 9. This strikes an appropriate balance between Wife's interest in seeking to enforce the I–864 Affidavit and

1. Quoting from *Sonder v. Sonder,* 378 Pa.Super. 474, 549 A.2d 155 (1988).

Husband's interest in being free from potential incarceration based on a breach of contract.[2]

The majority contends that the trial court's reliance on *Nicholson* was improper because it was decided "before the 1988 amendments to the Divorce Code," which included the enactment of 23 Pa.C.S.A. § 3105. Section 3105 applies to "an agreement regarding matters within the jurisdiction of the court *under this part.*" *Id.* (underlining added). "[T]his part" refers to the Divorce Code, which is Part IV of Title 23, "Domestic Relations." 23 Pa. C.S.A. § 3101. However, the instant matter is an action for support. Support actions are governed by Title 23, Part V, "Support, Property and Contracts." Thus, Section 3105, related to issues arising under Part IV, the Divorce Code, is inapplicable to a support action, which is governed by Part V. Thus, I believe Section 3105 is inapplicable in the instant matter.

The majority's reliance of Pa.R.C.P. 1910.16–5(1) and (1) is misplaced. The existence of the affidavit required by the federal statute has not established that Wife has "unusual needs" or "unusual fixed obligations." Nor are there "relevant and appropriate factors" justifying departure from determination of Husband's support obligation based on the monthly net income of the parties.

Contract damages based on the Affidavit of Support were not before the trial court.

Accordingly, we need not address Wife's contention that the trial court erred in concluding that she was not prejudiced by the Court's refusal to enforce the Affidavit of Support because she "might not be entitled to any amount under the Affidavit of Support." The Affidavit of Support is to be litigated another day, and any observations of the trial court relating to the effect of the support order on the Affidavit of Support are dicta.[3]

Wife also argues that the trial court erred in concluding that she was not prejudiced by the court's refusal to enforce the Affidavit of Support because she may have waived her right to raise the issue. Despite raising the possibility of waiver, the court considered, addressed, and rejected Wife's argument that the court should have enforced the Affidavit of Support. Furthermore, the trial court recognized that "Wife is free to pursue enforcement of the agreement in civil proceedings." The contractual obligation to provide support at 125% of the federal poverty level by order of court risks creating a situation wherein Husband is subject to attachment and contempt proceedings for an obligation beyond his ability to pay.

For the foregoing reasons, I would affirm the trial court's order.

---

**2.** Wife argues that once the trial court determined not to enforce the Affidavit of Support in the support action, it should have enforced it as a contract obligation. She asserts that by introducing the Affidavit of Support at the master's hearing, raising the issue in her exceptions to the second master's report and arguing it in her memorandum in support of exceptions, and at the June 15, 2010 hearing, she was entitled to relief on a contract theory. Neither the Complaint nor the Amended Complaint advised Husband that he was being sued for breach of contract.

**3.** In dicta, the trial court noted that Wife claimed that she was entitled to spousal support in the amount of $13,537,50 per year, which is 125% of the poverty guideline level for a family of one. However, 125% of the poverty guideline level for a family of two, such as Wife and her daughter, is $18,212.50 per year. The Court asserted that Wife's earning capacity of $9,740, the child support award of $7,464 and the spousal support award of $3,876, total $21,090 per year, which exceeds the poverty guideline level for a family of two.