Filed 6/20/25

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re Marriage of SUNDAY ADEYEYE and ADEBUKOLA FARAMAYE. | |
| SUNDAY ADEYEYE,<br><br>    Appellant,<br><br>        v.<br><br>ADEBUKOLA FARAMAYE,<br><br>    Respondent. | G064553<br><br>(Super. Ct. No. FAMSB2301136)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of San Bernardino County, Christian Towns, Judge. Reversed and remanded with instructions.

Law Offices of Wole Akinyemi and Wole Akinyemi for Appellant.

Family & Bankruptcy Attorneys and David Akintimoye for Respondent.

\*       \*       \*

In this marital dissolution proceeding, Sunday Adeyeye (Adeyeye) appeals from an order requiring him to pay support to Adebukola Faramaye (Faramaye), his immigrant spouse, pursuant to an I-864 affidavit of support (I-864 affidavit). Adeyeye signed the I-864 affidavit, undertaking financial responsibility for Faramaye as a condition of her immigration to the United States. As required by the I-864 affidavit, Adeyeye agreed to maintain Faramaye's income at no less than 125 percent of the federal poverty guidelines. Adeyeye subsequently filed a petition for dissolution of marriage, and Faramaye sought a support order based on the I-864 affidavit. The trial court granted Faramaye's request and ordered Adeyeye to pay $1,569 per month, which corresponded to 125 percent of the federal poverty guidelines. In doing so, the court declined to consider Faramaye's income.

Adeyeye raises two arguments on appeal. First, he contends the court erred by refusing to consider Faramaye's federal taxable income when determining his support obligation. He argues her income must be considered because he is only obligated to maintain her income at 125 percent of the federal poverty guidelines. Second, Adeyeye asserts Faramaye's request for attorney fees is premature. For the reasons *infra*, we agree with Adeyeye's former contention. Faramaye's income is relevant in determining the amount Adeyeye must pay to satisfy his I-864 obligation. We therefore reverse the order, remand for further proceedings consistent with this opinion, and need not address the attorney fees issue at this juncture.

## FACTS

### I.

### THE I-864 AFFIDAVIT OF SUPPORT

Adeyeye is a United States citizen and was born in Nigeria. After

he married Faramaye, a Nigerian citizen, Adeyeye signed an I-864 affidavit and submitted it to the federal government. An I-864 affidavit is meant "'to ensure that an immigrant does not become a public charge.'" (*In re Marriage of Kumar* (2017) 13 Cal.App.5th 1072, 1075.) An affiant like Adeyeye is typically called a "'sponsor.'" (*Ibid.*)

Under the heading "Sponsor's Contract," the I-864 affidavit stated: "Please note that, by signing this Form I-864, you agree to assume certain specific obligations under the Immigration and Nationality Act . . . and other Federal laws." On the same page, the affidavit explained: "If an intending immigrant becomes a lawful permanent resident in the United States based on a Form I-864 that you have signed, then, until your obligations under Form I-864 terminate, *you must*: [¶] A. *Provide the intending immigrant any support necessary to maintain him or her at an income that is at least 125 percent of the Federal Poverty Guidelines for his or her household size . . . .*" (Italics added.)

The I-864 affidavit also noted a sponsor's obligations do not terminate upon divorce. Instead, the sponsor's obligations terminate if the sponsored immigrant: (1) "Becomes a U.S. citizen"; (2) "Has worked, or can receive credit for, 40 quarters of coverage under the Social Security Act"; (3) "No longer has lawful permanent resident status and has departed the United States"; (4) "Is subject to removal, but applies for and obtains, in removal proceedings, a new grant of adjustment of status, based on a new affidavit of support, if one is required"; or (5) "Dies."

## II.

### FARAMAYE'S REQUEST FOR ORDER

In 2023, Adeyeye filed a petition for dissolution of marriage.

3

About a year later, Faramaye filed a request for order seeking $1,569 per month in spousal support based on the I-864 affidavit (the RFO). She also requested $10,500 in attorney fees and costs to enforce her right to support under the I-864 affidavit. She noted the poverty guideline for a one-person household for 2024 was $15,060 per year and concluded Adeyeye had to pay $1,569 per month in spousal support—i.e., 125 percent of $15,060 divided by 12 months. According to Faramaye, she was a conditional permanent resident, and Adeyeye had to pay the above referenced support until she became a United States citizen.

Adeyeye filed a responsive declaration opposing the RFO. He argued the I-864 affidavit was void because Faramaye "defrauded" him by pretending to be interested in marriage when her true intention was to get a green card. In support of his opposition, Adeyeye also filed a list of affirmative defenses, which included a "perjury" defense. According to Adeyeye, Faramaye committed perjury by lying about her employment. Adeyeye noted Faramaye earned $57,900 by December 31, 2023, which was more than 125 percent of the federal poverty guidelines. He accordingly argued he did not owe any support under the I-864 affidavit.

III.

THE HEARING AND THE COURT'S ORDER

At the hearing, Adeyeye argued a sponsor's support obligation pursuant to an I-864 affidavit should be reduced by the sponsored immigrant's earned income. He likewise argued a sponsor has no duty to provide support if the sponsored immigrant earns more than 125 percent of the federal poverty guidelines. The court disagreed and relied on the five circumstances when a sponsor's obligations terminate to conclude "work, in

4

and of itself, [cannot] negate the obligation under I-864." The court added: "It's quite apparent, just based on the length of time [Faramaye] has been working, she hasn't been credited with 40 qualifying quarters of work." The court concluded Faramaye had a contractual right to support under the I-864 affidavit "until she reaches 40 quarters."

In a minute order, the court ordered Adeyeye to pay $1,569 per month in spousal support to Faramaye and set another hearing to address Faramaye's request for attorney fees. Adeyeye filed a timely notice of appeal.

## DISCUSSION

Adeyeye contends the court erred by declining to consider Faramaye's federal taxable income when determining his support obligation under the I-864 affidavit. According to Adeyeye, a sponsored immigrant's "income must be credited to determine what the sponsor [owes] since [the] sponsor is only obligated to support the immigrant 125 percent of the poverty guideline . . . ." He also argues Faramaye's request for attorney fees is premature because she is not presently seeking to enforce or collect a judgment. We agree Faramaye's income is relevant to determining Adeyeye's support obligation under the I-864 affidavit and remand for further proceedings.

### I.

### THE ORDER IS APPEALABLE, AND ADEYEYE DID NOT FORFEIT HIS ARGUMENTS

At the outset, we address two arguments raised by Faramaye. First, she contends the court's minute order is not appealable because "no written order was filed and there is no final order on file." Faramaye's point is unavailing because the court's minute order did not direct a written order to be prepared. (*Smith v. Smith* (2012) 208 Cal.App.4th 1074, 1091 [minute

order was not appealable where it required a party to prepare a formal order]; see Cal. Rules of Court, 8.104, rule 8.104(c)(2) ["The entry date of an appealable order that is entered in the minutes is the date it is entered in the permanent minutes. But if the minute order directs that a written order be prepared, the entry date is the date the signed order is filed . . . ."].) Code of Civil Procedure section 904.1, subdivision (a)(10) also authorizes appeals from orders made appealable by the Family Code. Faramaye does not dispute the latter statute applies here.

Faramaye next argues Adeyeye forfeited his appellate arguments because he did not raise them in his opposition to the RFO, did not reference the case law he cites on appeal, and did not file a motion for reconsideration. Not so. In opposition to the RFO, Adeyeye submitted a list of affirmative defenses, which stated, inter alia, that he did not owe any support given Faramaye's income. He also argued this issue at the hearing. Adeyeye accordingly raised his arguments in the trial court proceedings, and the cases he cites on appeal do not advance any new legal arguments. He therefore did not need to file a motion for reconsideration and has not forfeited his arguments.

II.

THE COURT ERRED BY REFUSING TO CONSIDER FARAMAYE'S INCOME

A. *Applicable Law and Standard of Review*

An I-864 affidavit is a legally binding contract enforceable by the sponsored immigrant in state or federal court. (*In re Marriage of Kumar*, *supra*, 13 Cal.App.5th at p. 1075.) By signing an I-864 affidavit, "the sponsor agrees to provide support to maintain the sponsored alien at an annual income that is not less than 125 percent of the Federal poverty line during

6

the period in which the affidavit is enforceable." (8 U.S.C. § 1183a(a)(1)(A).)

The question of whether the income of a sponsored immigrant should be considered in calculating the sponsor's support obligation under an I-864 affidavit appears to be one of first impression in California. Because the issue presented is a question of law on undisputed facts, we review the issue de novo. (*In re Marriage of Kumar*, *supra*, 13 Cal.App.5th at p. 1078; *In re Marriage of Left* (2012) 208 Cal.App.4th 1137, 1145.)

### B. *Adeyeye's Support Obligation*

Here, the trial court did not believe Faramaye's income could reduce Adeyeye's support obligation until Faramaye was "credited with 40 qualifying quarters of work." In reaching this conclusion, the court incorrectly relied on the circumstances that terminate a sponsor's obligations. As noted in the I-864 affidavit signed by Adeyeye, a sponsor's obligations terminate only if the sponsored immigrant: (1) becomes a United States citizen; (2) has worked or can be credited with 40 qualifying quarters of coverage under the Social Security Act; (3) no longer has lawful permanent resident status and departs the United States; (4) obtains a new grant of adjustment of status in a removal proceeding; or (5) dies. (8 C.F.R. § 213a.2(e)(2)(i); see 8 U.S.C. § 1183a(a)(2)–(3).) While these five circumstances concern the termination of a sponsor's obligations, they do not address what, if anything, the sponsor owes to maintain the sponsored immigrant at an annual income that is at least 125 percent of the federal poverty guidelines. (8 U.S.C. § 1183a(a)(1)(A).) In the instant action, the central issues are what support Adeyeye owes to provide a minimum level of financial support (equal to 125 percent of the federal poverty guidelines) and whether Faramaye's income is relevant to the inquiry.

7

Several courts have concluded a sponsored immigrant's income should be deducted from the 125 percent threshold. For example, in *Naik v. Naik* (N.J. Super. Ct. App. Div. 2008) 944 A.2d 713, a New Jersey appellate court held "the sponsor is not necessarily required to pay the sponsored immigrant 125 percent of the Federal Poverty Guidelines for the appropriate family unit size." (*Id.* at p. 398.) Instead, "considering the sponsored immigrant's own income, assets and other sources of support, the sponsor must pay any deficiency in order to meet this minimum level or floor." (*Ibid.*)

Similarly, in *Love v. Love* (Pa. Super. Ct., Dec. 14, 2011) 33 A.3d 1268, a Pennsylvania appellate court explained a sponsor's obligation "is limited to rectifying the deficiency between the sponsored immigrant's income and the appropriate guideline amount." (*Id.* at p. 1275.) The court added that a trial court's "inquiry should concentrate upon the reality of the immigrant spouse's **actual** income from all sources of support without inflating that figure by adding theoretical earning capacity to the calculation." (*Id.* at pp. 1278–1279.)

In *Backman v. Backman* (Ga. Ct. App. 2022) 875 S.E.2d 510, a Georgia appellate court likewise held a wife was not entitled to additional support pursuant to a husband's I-864 obligation "because 'a sponsor is required to pay only the difference between the sponsored non-citizen's income and the 125% of poverty threshold.'" (*Id.* at p. 514.) Other state and federal courts are in accord with this conclusion. (*Kazmi v. Kazmi* (Tex. App. 2023) 693 S.W.3d 556, 572–573; *Asilonu v. Okeiyi* (M.D.N.C. 2023) 673 F.Supp.3d 776, 782–786; *Erler v. Erler* (9th Cir. 2020) 798 Fed.Appx. 150, 151*, Shumye v. Felleke* (N.D. Cal. 2008) 555 F.Supp.2d 1020, 1024–1028; *Younis v. Farooqi* (D. Md. 2009) 597 F.Supp.2d 552, 556.)

Considering the plain language and statutory purpose of the I-864 affidavit, we are persuaded by the latter cases. The I-864 affidavit states Adeyeye had to provide "*any* support *necessary to maintain*" Faramaye "at an income that is at least 125 percent of the Federal Poverty Guidelines . . . ." (Italics added.) It does not impose an unconditional obligation to pay 125 percent of the federal poverty guidelines. Rather, Adeyeye had to provide "any support necessary" to satisfy the minimal requirement, which necessarily requires consideration of Faramaye's income. This interpretation is consistent with the clear statutory purpose behind the I-864 affidavit, which is to prevent the sponsored immigrant from becoming a public charge. An interpretation that ignores the sponsored immigrant's own income and requires payment of the full 125 percent amount in all cases would impose a greater burden than contemplated and is not supported by the language of the I-864 affidavit.

For the foregoing reasons, we remand for the trial court to consider Faramaye's income in determining whether, and to what extent, she is entitled to support under the I-864 affidavit. Adeyeye is required to pay the difference, if any, between Faramaye's income and 125 percent of the federal poverty guidelines. We acknowledge that courts have adopted varying definitions of "income" in this context. (See, e.g., *Erler v. Erler*, *supra*, 798 Fed.Appx. at p. 151 [food stamps qualify as income]; *Zhu v. Deng* (N.C. Ct. App. 250 N.C.App. 803 ["Assets do not amount to income . . . ."]; *Love v. Love*, *supra*, 33 A.3d 1268 at pp. 1278–1279 [earning capacity is not relevant]; *Barnett v. Barnett* (Alaska 2010) 238 P.3d 594, 598–599 [considering earning capacity].) Rather than address this issue for the first time on appeal, we will leave it to the trial court to decide what financial resources, if any, qualify as

Faramaye's income. Finally, because we reverse and remand for further proceedings, we need not address the attorney fees issue at this time.[1]

DISPOSITION

The order is reversed. On remand, the court is directed to reconsider Adeyeye's support obligation under the I-864 affidavit and to consider Faramaye's income when determining the extent of Adeyeye's obligation. Adeyeye shall recover his costs incurred on appeal.

SANCHEZ, ACTING P. J.

WE CONCUR:

GOODING, J.

SCOTT, J.

---

[1] In her respondent's brief, Faramaye requests that we take judicial notice of Adeyeye's income and expense declaration filed on May 1, 2023. Aside from her failure to seek judicial notice by a separate motion (Cal. Rules of Court, rule 8.252(a)(1)), the document is unnecessary to resolve this appeal. The request for judicial notice is denied.