[830 NYS2d 399]

John Moody, Respondent, v Svetlana Sorokina, Appellant.
(Appeal No. 1.)

Fourth Department, February 2, 2007

## APPEARANCES OF COUNSEL

*Svetlana Sorokina*, appellant pro se.

*Scolaro, Shulman, Cohen, Fetter & Burstein, P.C.*, Syracuse (*Shari R. Cohen* of counsel), for respondent.

*Eugene J. Langone, Jr., Law Guardian*, Watertown, for N.M.

## OPINION OF THE COURT

PINE, J.

## I

Defendant is a Ukrainian national who emigrated to the United States in order to marry plaintiff, and the parties were married in the United States in June 1999. In July 1999 plaintiff executed a federal affidavit of support, Form I-864, in which he agreed, inter alia, to support defendant at or above 125% of the federal poverty line until the occurrence of a qualifying terminating event. The parties had a child in November 2001, and in May 2002 plaintiff obtained an ex parte temporary order of custody and a temporary Family Court order of protection requiring defendant to stay away from plaintiff and the child. Also in May 2002 plaintiff commenced a divorce action against defendant. Family Court transferred the custody matter to Supreme Court to be addressed in the context of the pending divorce action. A judgment of divorce was entered in October 2004, but the issues of custody, maintenance, support pursuant to the federal affidavit of support and equitable distribution were not addressed in that judgment. Following separate trials on custody and the economic issues, Supreme Court issued an order that, inter alia, granted the parties joint custody of the child, with primary physical placement to plaintiff, and determined the issues of maintenance, support pursuant to the federal affidavit of support and equitable distribution.

We note at the outset that the amended order in appeal No. 2 merely corrected references to the parties, and thus defendant's appeal from the amended order should be dismissed (see *Matter of Kolasz v Levitt*, 63 AD2d 777, 779 [1978]). One of defendant's contentions on appeal is that the court erred in determining that defendant was not entitled to seek enforcement of the federal affidavit of support. This contention raises an issue of first impression at the appellate level in New York and, for the reasons that follow, we agree with defendant.

## II

Family-sponsored immigrants such as defendant are generally considered "ineligible . . . to be admitted to the United States" unless the immigrant has obtained the status of a spouse or other acceptable classification and "the person petitioning for the alien's admission . . . has executed an affidavit of support described in section 1183a" (8 USC § 1182 [a] [4] [C] [ii]; see § 1182 [a] [4] [C] [i]; *Cheshire v Cheshire*, 2006 WL 1208010, *2, 2006 US Dist LEXIS 26602, *5 [MD Fla]; Gallagher, Immigration Law—Basics and More, *Grounds of Inadmissibility*, American Law Institute-American Bar Association Continuing Legal Education, May 6, 1999, SD61 ALI-ABA 265, 277).

Before the enactment of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA) (Pub L 104-208, 110 US Stat 3009-546), which amended Immigration and Nationality Act (INA) § 213A, the affidavit of support was Form I-134. That affidavit was held not to constitute a legally enforceable contract against a sponsor by a sponsored immigrant (*see Cheshire*, 2006 WL 1208010, *2, 2006 US Dist LEXIS 26602, *6; *Tornheim v Kohn*, 2002 WL 482534, *3-5, 2002 US Dist LEXIS 27914, *7-15 [ED NY]). The IIRIRA, however, "instituted a legally enforceable affidavit of support for most family[-]based immigrant visa applications" (Notkin, 30th Annual Immigration and Naturalization Institute, *The New Affidavit of Support*, Practising Law Institute, Oct. 1997, 1021 PLI/Corp 309, 311). The new affidavit of support is Form I-864 (*see* Sheridan, *The New Affidavit of Support and Other 1996 Amendments to Immigration and Welfare Provisions Designed to Prevent Aliens from Becoming Public Charges*, 31 Creighton L Rev 741, 752). Pursuant to 8 USC § 1183a (a) (1),

> "[n]o affidavit of support may be accepted by the Attorney General . . . unless such affidavit is executed by a sponsor of the alien *as a contract*—

> "(A) in which the sponsor agrees to provide support to maintain the sponsored alien at an annual income that is not less than 125 percent of the Federal poverty line during the period in which the affidavit is enforceable;

> "(B) that is legally enforceable against the sponsor *by the sponsored alien* . . . ; and

> "(C) in which the sponsor agrees to submit to the jurisdiction of any Federal or State court for the purpose of actions brought under subsection (b) (2) of this section [, i.e., actions 'to compel reimbursement']" (emphasis added).

Pursuant to section 1183a (e) (1), an action to enforce an affidavit of support may be brought in "any appropriate court . . . by a sponsored [immigrant], with respect to financial support." Thus, the statute expressly permits the sponsored immigrant to bring an action for enforcement of the affidavit of support against the sponsor in any federal or state court (*see* 8 USC § 1183a [a] [1] [B]; INA § 213A [a] [1] [B]; *see also* von Sternberg, 31st Annual Immigration & Naturalization Institute, *Summary of New Affidavit of Support Requirements*, Practising

Law Institute, Oct. 1998,1080 PLI/Corp 309, 312; Sheridan, 31 Creighton L Rev at 761; Notkin, 1021 PLI/Corp at 314-315). The enforceability of the affidavit terminates when, inter alia, the sponsored immigrant "has worked 40 qualifying quarters of coverage as defined under title II of the Social Security Act [42 USC § 401 *et seq.*]" (8 USC § 1183a [a] [3] [A] [i]).

In accordance with 8 USC § 1183a a sponsor is required to sign Form I-864, which provides in relevant part:

> "I understand that, under section 213A of the [INA], as amended, this affidavit of support constitutes a contract between me and the U.S. Government. This contract is designed to protect the United States Government, and State and local government agencies or private entities that provide means-tested public benefits, from having to pay benefits to or on behalf of the sponsored immigrant(s), for as long as I am obligated to support them under this affidavit of support. I understand that the sponsored immigrants . . . are entitled to sue me if I fail to meet my obligations under this affidavit of support, as defined by section 213A and [Immigration and Naturalization Service] regulations. . . .

> "I acknowledge that section 213A (a) (1) (B) of the [INA] grants the sponsored immigrant(s) . . . standing to sue me for failing to meet my obligations under this affidavit of support. I agree to submit to the personal jurisdiction of any court of the United States or of any State, territory, or possession of the United States if the court has subject matter jurisdiction of a civil lawsuit to enforce this affidavit of support. . . .

> "I acknowledge that a plaintiff may seek specific performance of my support obligation . . . [and that] I may also be held liable for costs of collection, including attorney fees." (Emphasis omitted.)

The cases that have addressed the enforceability of the Form I-864 affidavit of support by the sponsored immigrant have found that the form is a legally enforceable contract and that the sponsored immigrant "has independent standing to enforce the sponsor's obligation" in any federal or state court (*Davis v Davis*, 2004 WL 2924344, *3, 2004 Ohio App LEXIS 6389, *8 [Ct App, 6th Dist]; *see Cheshire*, 2006 WL 1208010, *3, 2006 US

Dist LEXIS 26602, *9; *Stump v Stump*, 2005 WL 1290658, *4-5 [ND Ind]; *Schwartz v Schwartz*, 2005 WL 1242171, *1-2, 2005 US Dist LEXIS 43936, *3-5 [WD Okla]; *Ainsworth v Ainsworth*, 2004 US Dist LEXIS 28961, *7-8 [MD La]; *see also Tornheim*, 2002 WL 482534, *3-5, 2002 US Dist LEXIS 27914, *7-15). Courts have also held that the sponsored immigrant's right to support under the Form I-864 affidavit of support is unaffected by a judgment of divorce (*see Cheshire*, 2006 WL 1208010, *4-5, 2006 US Dist LEXIS 26602, *13-14; *Schwartz*, 2005 WL 1242171, *2, 2005 US Dist LEXIS 43936, *5; *Muir v Muir*, 2002 WL 1837964, *3 [Conn Super Ct]; *Ainsworth*, 2004 US Dist LEXIS 28961, *6).

█ We therefore conclude that the court erred in determining that defendant was not entitled to seek enforcement of the federal affidavit of support on the grounds that the statute was for public benefit only and did not afford defendant a private cause of action.

### III

█ We now address defendant's remaining contentions on this appeal. Although defendant raises multiple challenges to the temporary orders issued by Family Court, we conclude that those challenges are not properly before this Court. Contrary to defendant's contention, those nonfinal orders did not necessarily affect the final order before us on this appeal, i.e., the order in appeal No. 1 (*see* CPLR 5501 [a] [1]; *Matter of Cicardi v Cicardi*, 263 AD2d 686 [1999]). In any event, any challenge to those temporary orders has been rendered moot because they have expired by their terms and have been superseded by the order before us in appeal No. 1 (*see Kelly v Kelly*, 19 AD3d 1104, 1107 [2005], *appeal dismissed* 5 NY3d 847 [2005], *reconsideration denied and lv dismissed and denied* 6 NY3d 803 [2006]; *Connolly v Connolly*, 48 AD2d 875 [1975]). Because the order before us followed a full trial of the divorce action in Supreme Court, defendant has received due process (*see generally Matter of Harner v County of Tioga*, 5 NY3d 136, 140 [2005]), and there was no violation of Judiciary Law § 21 (*cf. Matter of Connelly-Logal v West*, 272 AD2d 920 [2000]; *Michel v Michel*, 31 AD2d 313, 314-315 [1969]). Contrary to defendant's further contentions, there is no evidence that the court abused its discretion in determining that defendant was not in need of an interpreter (*see generally Matter of Mercure [Commissioner of Labor]*, 27 AD3d 857, 858 [2006]), nor did the court exceed its

authority in requiring defendant to surrender her Ukrainian passport during her periods of visitation with the parties' child (*see Anonymous v Anonymous*, 120 AD2d 983 [1986], *appeal dismissed* 68 NY2d 808 [1986]; *Kresnicka v Kresnicka*, 42 AD2d 607 [1973]).

■ We reject defendant's contentions that the court abused its discretion in admitting certain expert testimony and in refusing to admit other expert testimony. The admissibility and scope of expert testimony rests within the sound discretion of the trial court (*see De Long v County of Erie*, 60 NY2d 296, 307 [1983]). " '[A] witness may testify as an expert if it is shown that he [or she] is skilled in the profession or field to which the subject relates, and that such skill was acquired from study, experience, or observation' " (*Karasik v Bird*, 98 AD2d 359, 362 [1984]; *see Matott v Ward*, 48 NY2d 455, 459 [1979]). Plaintiff established that his medical expert possessed "the requisite skill, training, education, knowledge or experience from which it can be assumed that the information imparted or the opinion rendered is reliable" (*Matott*, 48 NY2d at 459). Defendant's purported expert, however, admitted that she was "not a medical expert" and that she had not reviewed the documents relating to the child's medical conditions.

■ Based on the evidence adduced with respect to custody and in view of the great deference accorded the custody determination of the trial court, we conclude that the court's custody determination is in the best interests of the child (*see generally Eschbach v Eschbach*, 56 NY2d 167, 173 [1982]). Contrary to the contention of defendant, the court did not infringe upon her fundamental right to make decisions affecting her child. Defendant's reliance upon cases addressing the rights of a parent as against a nonparent with respect to decisions concerning a child is misplaced because here we are concerned with the decision-making rights of the two parents.

■ With respect to the maintenance and equitable distribution awards, we note that, although such awards generally are left to the sound discretion of the trial court (*see Smith v Smith*, 306 AD2d 908, 909 [2003]; *Boughton v Boughton*, 239 AD2d 935 [1997]), the authority of this Court is as broad as that of the trial court with respect to such awards (*see Wipperman v Wipperman*, 277 AD2d 1040, 1041 [2000]; *Marino v Marino*, 229 AD2d 971, 972 [1996]). We see no basis to disturb the maintenance award but, in the exercise of our discretion, we conclude with respect to the equitable distribution award that defendant

should be awarded the sum of $8,000, representing one half of the value of the parties' 2001 Jeep Grand Cherokee as of the date of the trial.

## IV

Accordingly, in the exercise of our discretion, we conclude that the order in appeal No. 1 should be modified by awarding defendant the sum of $8,000 as equitable distribution of the parties' 2001 Jeep Grand Cherokee, and the matter should be remitted to Supreme Court to enforce the federal affidavit of support executed by plaintiff. We further conclude that the appeal from the amended order in appeal No. 2 should be dismissed.

SCUDDER, P.J., MARTOCHE and CENTRA, JJ., concur.

It is hereby ordered that the order so appealed from be and the same hereby is unanimously modified in the exercise of discretion and on the law by awarding defendant the sum of $8,000 as equitable distribution of the parties' 2001 Jeep Grand Cherokee and as modified the order is affirmed without costs, and the matter is remitted to Supreme Court, Jefferson County, for further proceedings.