944 A.2d 713 (2008)
399 N.J. Super. 390
Sumeru NAIK, Plaintiff-Respondent,
v.
Urvi NAIK, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued September 24, 2007.
Decided April 14, 2008.
Urvi Naik, appellant, argued the cause pro se.
Michael E. Spinato argued the cause for respondent (Spinato, November, Conte & Acquaviva, attorneys; Mr. Spinato, of counsel; Robert J. Kane, on the brief).
Before Judges A.A. RODRÍGUEZ, C.S. FISHER and C.L. MINIMAN.
The opinion of the court was delivered by A.A. RODRÍGUEZ, P.J.A.D.
In this divorce appeal, we address the enforceability and amount of support that must be paid by the signer of an immigration Affidavit of Support (Form I-864EZ), pursuant to § 213A of the Immigration and Nationality Act (INA), 8 U.S.C.A. § 1183a. This form creates a binding contract that imposes an obligation on the sponsor of a sponsored immigrant to insure that the immigrant has available support at or above 125 percent of the federal *714 poverty line depending on the size of the family unit. This obligation, which is independent of spousal support, continues until the occurrence of one of several statutory termination events. We hold that Form I-864EZ support is enforceable in New Jersey courts. However, in setting such support the court may consider alimony, child support and equitable distribution awards in determining the sponsor's obligation.

Statement of Facts
Urvi Naik (wife), age twenty-eight, appeals from: the April 10, 2006 judgment of divorce following a trial; and the June 23, 2006 order denying reconsideration.
Wife and Sumeru Naik (husband), age thirty, were married in India on December 8, 2003. The circumstances of the marriage were atypical. The bride and groom had never met. A few days after the marriage ceremony, husband returned to the United States. Wife remained in India. She came to the United States fifteen months later, in March 2005. The only contact the parties had with one another during that fifteen-month period was via telephone. It is uncontested that in order to bring wife to the United States, husband signed an Affidavit of Support pursuant to § 213A of the INA. Once wife arrived in the United States, she moved into the Elmwood Park home owned by husband's parents, with whom he resided. Although the parties shared a bed, wife alleges that the marriage was never consummated. Three months later, the parties began to live in separate rooms. Thereafter, wife moved out.
Husband sued for divorce alleging extreme cruelty. Wife counterclaimed alleging extreme cruelty and constructive desertion. Wife sought pendente lite support. Husband opposed the application and sought counsel fees. The judge awarded $200 per week support to wife and denied husband's request for counsel fees.
At trial, both parties were represented by counsel. After hearing the testimony of the parties, the judge entered a dual judgment of divorce. The judge found that alimony was unwarranted based on: the very short duration of the marriage; the young ages of the parties; the fact that no children were born of the marriage; and that both parties are in good physical and emotional health. The judge found that wife is a well-educated person, having a post-high school diploma in mechanical engineering and being fluent in Hindi and Gujarati and practically fluent in English. The marriage did not absent wife from the job market. Wife demonstrated no plans to return to school or to rehabilitate herself in any way. There was no standard of living established that would show a need for rehabilitative alimony. The judge concluded that the pendente lite support granted to wife was reasonable, but that it should not continue in the form of alimony.
The only property the parties acquired during the marriage was a 2004 Hyundai Sonata purchased in December 2004 with a loan from husband's father. The undisputed value of the vehicle at time of trial was $10,500. The judge awarded equitable distribution to wife in the amount of $7,650, consisting of one-half of the value of the Sonata ($5,250) and the full value of a Postal Certificate ($2,400), which was a gift from wife's father. A 401K account held by husband was awarded solely to him. Furniture and other furnishings used by the parties during the marriage belonged to husband.
Both husband and wife testified that they incurred counsel fees in this litigation in the amounts of $13,000 and $5,000, respectively. The judge denied both claims for counsel fees.
*715 Wife moved pro se for reconsideration. At oral argument, wife argued, among other things, that by signing the Affidavit of Support in order to bring her from India to the United States, husband was legally bound to support her. This issue was raised for the first time on the motion for reconsideration. Wife did not brief it. Wife also asked that husband return her jewelry to her and that the court award her counsel fees. The judge denied reconsideration and the request for counsel fees. The parties agreed to the return of the jewelry.
Wife appeals, challenging the no-alimony award, the equitable distribution award and the denial of counsel fees.[1] We are satisfied that the judgment of the trial court regarding equitable distribution and counsel fees is based on findings of fact, which are adequately supported by the evidence. R. 2:11-3(e)(1)(A). Moreover, the rulings by the judge are sound and according to governing law. We are mindful that, "[b]ecause of the [F]amily [Part's] special jurisdiction and expertise in family matters, appellate courts should accord deference to family court factfinding." Cesare v. Cesare, 154 N.J. 394, 413, 713 A.2d 390 (1998). We accord such deference here and affirm the equitable distribution and counsel fees decision. Whether the standard alimony award should be supplemented by Form I-864EZ support is discussed in the next point.
Wife also asserts, independently of the established principles governing spousal support, that she is entitled to support pursuant to the Affidavit of Support and to enforce such obligation in the Family Part. Wife argues that when husband sponsored her and signed an Affidavit of Support, he took on a contractual obligation to support her, and this claim is independent of spousal support principles that govern the rights and obligations of the parties upon dissolution of a marriage.
Wife raised this claim for the first time in her motion for reconsideration. During trial, counsel raised the issue of the Affidavit of Support, but only for impeachment purposes. This was not a proper subject for such a motion. R. 4:49-2 provides that such a motion "shall state with specificity the basis on which it is made, including a statement of the matters or controlling decisions which counsel believes the court has overlooked or as to which it has erred." Here, the issue was not previously raised. The argument related to a new issue rather than require wife to file a R. 4:50 application or a separate action. R. 4:49-2 is not the vehicle for raising a new issue. Nonetheless, the equities in this case compel us to address the issue. R. 1:1-2. Two questions are presented: (1) whether the Affidavit of Support is enforceable in New Jersey courts; and (2) what is the standard for determining the amount of support.

Enforceability
A citizen or resident of the United States sponsoring an alien relative for admission must petition for the alien's admission and execute an Affidavit of Support (Form I-864EZ). 8 U.S.C.A. § 1182(a)(4)(C)(ii). Section 213A of the INA provides that the Affidavit of Support is a legally enforceable contract "against the sponsor by the sponsored alien. . . ." 8 U.S.C.A. § 1183a(a)(1)(B). Prior to a 1996 amendment, Pub.L. No. 104-208, 110 Stat. 3009-546 (1996), the Affidavit of Support was called Form I-134. It was not a legally binding contract. See Moody v. Sorokina, *716 40 A.D.3d 14, 830 N.Y.S.2d 399, 401 (2007). However, the 1996 amendments introduced Form I-864EZ, which creates a legally enforceable obligation. Ibid. See also Michael J. Sheridan, The New Affidavit of Support and Other 1996 Amendments to Immigration and Welfare Provisions Designed to Prevent Aliens from Becoming Public Charges, 31 Creighton L.Rev. 741, 752 (1998) (discussing the 1996 amendments).
The statute provides that an action to enforce this contract "may be brought against the sponsor in any appropriate court(1) by a sponsored alien, with respect to financial support. . . ." 8 U.S.C.A. § 1183a(e). See also Affidavits of Support on Behalf of Immigrants, Use of affidavit of support, 8 C.F.R. § 213a.2(d) (2008) ("The sponsored immigrant . . . may seek enforcement of the sponsor's obligations through an appropriate civil action.").
Once a sponsor files an Affidavit of Support, the sponsor agrees to support the sponsored immigrant at an annual rate of "not less than 125 percent of the Federal poverty line. . . ." 8 U.S.C.A. § 1183a(a)(1)(A). "Federal poverty line" means the level of income equal to the official poverty line (as defined by the Director of the Office of Management and Budget, as revised annually by the Secretary of Health and Human Services . . . )." Id. at § 1183a(h). The support must continue until a triggering termination event occurs, such as: the sponsored immigrant becomes a naturalized citizen, id. at § 1183a(a)(2); the sponsored immigrant completes 40 qualifying quarters of work (approximately 10 years), id. at § 1183a(a)(3); or the sponsored immigrant becomes able to sufficiently provide for him or herself. Divorce, however, is not a terminable event. See Moody, supra, 830 N.Y.S.2d at 402 (and cases cited therein).
Because New Jersey courts have yet to address claims pursuant to Form I-864EZ, we look to other jurisdictions for guidance. New York's Appellate Division recently considered a case similar to the one presently before us. In Moody, supra, husband sued wife for divorce and wife counterclaimed that she was entitled to support from husband as a result of the Affidavit of Support husband filed on her behalf. 830 N.Y.S.2d at 400. The trial court rejected wife's claim "on the grounds that the statute was for public benefit only and did not afford defendant a private cause of action." Id. at 402. The Appellate Division reversed and "as an issue of first impression at the appellate level in New York[,]" held wife was "entitled to seek enforcement of the federal affidavit of support." Id. at 401. The Appellate Division quoted at length the following instructions to the Affidavit of Support:
I understand that, under section 213A of the [INA], as amended, this affidavit of support constitutes a contract between me and the U.S. Government. This contract is designed to protect the United States Government, and State and local government agencies or private entities that provide means-tested public benefits, from having to pay benefits to or on behalf of the sponsored immigrant(s), for as long as I am obligated to support them under this affidavit of support. I understand that the sponsored immigrants . . . are entitled to sue me if I fail to meet my obligations under this affidavit of support, as defined by section 213A and [Immigration and Naturalization Service] regulations.
. . .
I acknowledge that section 213A(a)(1)(B) of the [INA] grants the sponsored immigrant(s) . . . standing to sue me for failing to meet my obligations under this affidavit of support. I agree to submit to the personal jurisdiction of any court *717 of the United States or of any State, territory, or possession of the United States if the court has subject matter jurisdiction of a civil lawsuit to enforce this affidavit of support.
. . .
I acknowledge that a plaintiff may seek specific performance of my support obligation . . . [and that] I may also be held liable for costs of collection, including attorney fees.
[Id. at 402.[2]]
The court in Moody found support in the uniform view of courts deciding this issue, all of which have found that the Affidavit of Support creates a binding contract, pursuant to which the sponsored immigrant may sue for support. We note that the 1996 amendments to the INA were intended to alter the state of the law, changing what was once only a moral obligation to a binding legal one. As stated above, this support obligation continues even after the sponsor and the sponsored immigrant are divorced. See Moody, supra, 830 N.Y.S.2d at 402.
Therefore, in agreement with the interpretation of the Affidavit of Support by these jurisdictions, we hold that when the obligation created by the Affidavit of Support is against a resident or for the benefit of a New Jersey resident, it may be enforced in the Superior Court of New Jersey. When the action involves, as it does here, a claim between spouses, it should be enforced in the Family Part by the sponsored immigrant. See R. 5:1-2(a).

Standard
The second question is: what is the standard for setting such support? A minimum standard or floor is set by § 213A, i.e., 125 percent of the Federal Poverty Line for the appropriate family unit size. 8 U.S.C.A. § 1183a(a)(1)(A). Part 6 of Form I-864EZ provides the following definition of the Sponsor's Contract:
If the [sponsored] immigrant becomes a permanent resident of the United States based on a Form I-864EZ that you have signed, then, until your obligations under the Form I-864EZ terminate, you must: Provide the [sponsored] immigrant any support necessary to maintain him or her at an income that is at least 125 percent of the Federal Poverty Guidelines for his or her household size. . . .
[(Emphasis added.)]
We construe this language to mean that the sponsor is not necessarily required to pay the sponsored immigrant 125 percent of the Federal Poverty Guidelines for the appropriate family unit size. Rather, considering the sponsored immigrant's own income, assets and other sources of support, the sponsor must pay any deficiency in order to meet this minimum level or floor. In short, the sponsored immigrant is expected to engage in gainful employment, commensurate with his or her education, skills, training and ability to work in accordance with the common law duty to mitigate damages. When the sponsor and sponsored immigrant are married, alimony, child support (if any) and equitable distribution of income-producing assets must be included in the sponsored immigrant's available support. Therefore, although Form I-864EZ support is an independent obligation, it is impacted by other monetary obligations set by the court in a matrimonial action.
Therefore, after setting spousal and child support and equitable distribution, *718 the court should only consider Form I-864EZ support if the sponsored immigrant's sources of support fall below 125 percent of the Federal Poverty Guidelines for the family unit size.[3] In that case the sponsor is required to pay the deficiency only. If the sponsored immigrant's sources of support exceed this level, then no Form I-864EZ support is mandated by the INA. Moreover, the duration of standard alimony and Form I-864EZ may differ. The Family Part sets the amount and duration of spousal support pursuant to N.J.S.A. 2A:34-23b and its interpreting case law. The obligation to pay Form I-864EZ support continues until one of the statutory terminating events occurs as discussed above.
Here, the judge awarded no alimony in accordance with governing case law and N.J.S.A. 2A:34-23b. As for Form I-864EZ support, we note that the statutory level in 2006, the year the judgment was entered, is $12,250 for a one-person family unit.[4] The level of support for 2007 and 2008 respectively are: $12,763.50 and $13,000.[5]
The record does not indicate the amount of other sources of income or support available to wife during these years. Accordingly, we remand for an evidentiary hearing. If wife's income during any one of those years exceeds the 125 percent level, husband has no support obligation for that year. If, in any year, her income is below this level, husband is obligated to pay the difference.
In sum, we affirm the equitable distribution and counsel fees determinations. We remand the alimony award to have the judge determine to what extent, if any, wife is entitled to FORM I-864EZ support.
Affirmed in part and reversed in part. We do not retain jurisdiction.
NOTES
[1] While the appeal was pending, wife moved for a stay. We denied the application. No. M-1748-06 (App.Div. November 27, 2006).
[2] This is the language of Form I-864EZ when the parties signed it. Form I-864EZ was revised 10/18/07, but the changes were not substantive. The obligation remains the same under the revised language.
[3] The Federal Poverty Guidelines are revised annually and are published in the Federal Register.
[4] Annual update of the HHS Poverty Guidelines, 71 Fed.Reg. 3848 (Jan. 24, 2006).
[5] Annual Update of the HHS Poverty Guidelines, 72 Fed.Reg. 3147 (Jan. 24, 2007); Annual Update of the HHS Poverty Guidelines, 73 Fed.Reg. 3971 (Jan. 23, 2008).