Filed 7/28/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re the Marriage of ASHLYNE and VIKASH KUMAR. | |
| ASHLYNE KUMAR,<br><br>     Appellant,<br><br>v.<br><br>VIKASH KUMAR,<br><br>     Respondent. | A145181<br><br>(San Mateo County<br>Super. Ct. No. FAM0124046) |

In this marital dissolution proceeding, an immigrant spouse seeks to enforce her contractual right to support based on the affidavit of support which her American spouse was required to submit to the federal government in connection with his petition to sponsor her for an immigration visa. As required by the terms of the affidavit of support, her American spouse promised to support her at an income of at least 125 percent of the federal poverty line for 10 years.

The issues raised in this appeal appear to be matters of first impression in California.[1] We hold that an immigrant spouse has standing to enforce the support obligation created by an I–864 affidavit in state court. We further hold that an immigrant spouse bringing such a claim has no duty to mitigate damages. Because the trial court's ruling in this matter conflicts with our holdings, we reverse. We remand to the trial court to consider the immigrant spouse's contract claim in accordance with this decision.

---

[1] We granted the application of National Immigrant Women's Advocacy Project to file a brief in support of Ashlyne as amicus curiae.

## FACTUAL AND PROCEDURAL BACKGROUND

Vikash Kumar was born in Fiji and is now a United States citizen. Ashlyne Kumar is a citizen of Fiji. On September 22, 2012, Vikash, then 27 years old, and Ashlyne, then 25, married in Fiji in an arranged marriage.[2]

Vikash filed a form I–130 immigration visa petition for alien relative on behalf of Ashlyne, and the petition was approved on December 1, 2012. In connection with bringing his new wife to the United States, Vikash signed a form I–864 affidavit of support (I–864 affidavit) and submitted it to the federal government in April 2013. The purpose of an I–864 affidavit is "to ensure that an immigrant does not become a public charge." (*Younis v. Farooqi* (D.Md. 2009) 597 F.Supp.2d 552, 557, fn. 5.) A form I–864 affiant is usually referred to as a "sponsor."

Under the heading "Part 8. Sponsor's Contract," the I–864 affidavit signed by Vikash gave the following warning: "Please note that, by signing this Form I–864, you agree to assume certain specific obligations under the Immigration and Nationality Act and other Federal laws." On the same page, the affidavit explained that, by signing the affidavit, the sponsor agreed to "[p]rovide the intending immigrant any support necessary to maintain him or her at an income that is at least 125 percent of the Federal Poverty Guidelines for his or her household size . . . ." The affidavit further stated, "If you do not provide sufficient support to the person who becomes a permanent resident based on the Form I–864 that you signed, that person may sue you for this support."

Ashlyne entered the United States in July 2013, and lived with Vikash and his family in Daly City. According to Ashlyne, Vikash began abusing her almost immediately.[3] He would not speak to her except to say that he did not want to be with

---

[2] For clarity and brevity, we refer to the parties by first name only. No disrespect is intended.

[3] The facts of this paragraph are taken from Ashlyne's request for a domestic violence restraining order filed in the dissolution proceeding, which was granted. In addition, Vikash and Ashlyne stipulated to a three-year restraining order protecting Ashlyne and restraining Vikash, which was filed on July 18, 2014.

her and that he wanted her to leave and to go back to Fiji. In December 2013, Vikash and his family "tricked" Ashlyne into going to Fiji with Vikash. After they arrived in Fiji, Vikash abandoned her there. Ashlyne also discovered that the page with her legal permanent resident stamp had been torn out of her passport.

Ashlyn obtained temporary travel documents from the United States Embassy in Fiji, and returned to the United States on December 29, 2013.

On January 14, 2014, Vikash filed a petition for annulment and, in the alternative, dissolution of marriage. In March 2014, Ashlyne filed a response to Vikash's petition. She asked the court to deny Vikash's request for an annulment and grant a dissolution of marriage. She did not ask for enforcement of the I–864 affidavit at that time. In April 2014, Ashlyne filed a financial statement, in which she indicated she received no salary or benefits, and she "applied for TANF, SSI, or GA/GR" (i.e., Temporary Assistance for Needy Families, Supplemental Security Income, or general assistance/general relief, respectively).

On May 7, 2014, the trial court held a hearing on spousal support. At the start of the hearing, counsel for Ashlyne informed the court that the parties had agreed to temporary spousal support for Ashlyne of $675 per month, but Ashlyne disagreed with Vikash's request for a "seek work" order and a "*Gavron* warning" that she was expected to become self-supporting.[4]

Ashlyne's counsel objected to an order that Ashlyne seek work on the ground that she did not have her current residency card because Vikash had stolen it and "she has no status currently." Her counsel also stated that Ashlyne was on general assistance and living in a shelter. Vikash's counsel argued that Ashlyne had a duty to become self-supporting, noting, "This was her choice to come here and stay here."

In response, Ashlyne's counsel raised the I–864 affidavit. She told the court that by signing the I–864 affidavit, Vikash "vow[ed] to support [Ashlyne] for 10 years or 40

_____

[4] See *In re Marriage of Gavron* (1988) 203 Cal.App.3d 705, 712 (*Gavron*); *In re Marriage of Schmir* (2005) 134 Cal.App.4th 43, 55 ["[A] '*Gavron* warning' is a fair warning to the supported spouse he or she is expected to become self-supporting."].)

3

quarters" and "swore under oath to support her." Vikash's counsel took the position "[t]he affidavit of support is irrelevant in this court."

At the close of the hearing, the trial court ordered temporary spousal support of $675 per month as agreed to by the parties. The court also gave a *Gavron* warning, explaining it was appropriate because "it has been a short-term marriage." However, the court did not issue a seek-work order because "there are some issues she needs to overcome before she can legally seek work in this country." Instead, the court ordered Ashlyne to make reasonable and good faith efforts "to get the necessary paperwork for her to be able to work in this country if she is intending on remaining here."

On September 3, 2014, Vikash filed a request for an order terminating spousal support and dissolving the marriage. Vikash asserted that Ashlyne had made no efforts to become self-supporting, and he urged the court to impute to her income from a full-time, minimum wage job.

Ashlyne filed a responsive declaration to Vikash's request. She stated that she did not have a work permit because Vikash stole her green card and she was still waiting for replacement papers. Ashlyne reported that when she tried to apply for jobs, she was asked for proof of residency, and that after Vikash abandoned her, she was on cash aid and food stamps until she started receiving spousal support. Ashlyne attached the I–864 affidavit to her response, and asked the court to continue support "because [Vikash] swore to the US Government he would take care of me for 10 years or 40 working quarters . . . ."

Subsequently, Ashlyne filed an amended memorandum of points and authorities in opposition to Vikash's request to terminate spousal support.[5] In this brief, Ashlyne asked the court to enforce the specific support requirements of the I–864 affidavit, requesting an order that Vikash "pay support at $1,196.15 per month." Ashlyne explained that the poverty guideline for a one-person household for 2014 was $11,670 per year, and she

---

[5] According to the register of actions, Ashlyne's original memorandum of points and authority was filed on October 16, 2014. The original memorandum is not part of the appellate record.

4

claimed Vikash was obligated to support her at $14,354.10 per year or $1,196.175 per month.

Ashlyne argued that an I–864 affidavit is a binding contract, and the support obligation of the I–864 affidavit was in addition to any right to spousal support based on state law. She maintained that divorce did not terminate the support obligation, and the short length of the marriage did not matter. Ashlyne further argued that requiring her to bring a separate contract action to enforce the obligation would be contrary to judicial economy. Therefore, she urged the court to order Vikash to pay support "as per his obligation under the I–864 affidavit of support, to the amount of $1,196.175 per month."

On March 18, 2015, the trial court heard argument on Vikash's request to terminate temporary spousal support and Ashlyne's request to enforce the support requirements of the I–864 affidavit. Ashlyne's counsel reported that Ashlyne was working up to 15 hours a week at a Blimpies, making $9 per hour. She was also attending school, working toward her GED. The trial court terminated temporary spousal support effective that day.

Ashlyne's counsel asked the court to address the I–864 affidavit. The court responded, "I find for the purposes of spousal support under California law she should be working full time making minimum wage. And so I'm not going to order him to pay her support because I find she's not working up to her full potential that she should be based on her ability and need." Counsel asked whether the trial court was denying Ashlyne's request to enforce the I–864 affidavit. The court responded, "Yes, I'm denying your request because I find the respondent is not using best efforts to find work. . . ." The court stated it would enforce the I–864 affidavit if the government sought enforcement and also told Ashlyne, "File a federal case."

The same day, the trial court entered a judgment restoring the parties to single status and terminating spousal support. Ashlyne timely appealed.

## DISCUSSION

A.   *Standard of Review*

On appeal, Ashlyne contends the trial court erred in ruling on her contract claim for enforcement of the I–864 affidavit by incorrectly finding that her failure to mitigate damages excused Vikash from his contractual obligations. Whether the trial court denied Ashlyne's enforcement claim on the ground she failed to mitigate damages or because it believed she had no right to enforce the contract in state court, the issues presented are questions of law on undisputed facts, which we review de novo. (*Department of Health Care Services v. Office of Administrative Hearings* (2016) 6 Cal.App.5th 120, 141.)

We reject Vikash's argument that the applicable standard of review is abuse of discretion. Vikash argues we should review whether the trial court abused its discretion in terminating temporary spousal support under the considerations set forth in the Family Code. Ashlyne, however, is not challenging the trial court's determination that she is not entitled to additional spousal support under California's statutory scheme. Her appellate claim is solely that the trial court erred "in denying enforcement of a contract formed by an I–864 Affidavit requiring financial support." Whether Ashlyne could enforce the I–864 affidavit in state court and whether she had duty to mitigate are questions of law.

**B.      *An I–864 Affidavit is a Contract Enforceable by the Sponsored Immigrant***

An I–864 affidavit is a legally enforceable contract between the sponsor and the sponsored immigrant. (*Shumye v. Felleke* (N.D.Cal. 2008) 555 F.Supp.2d 1020, 1023 (*Shumye*).) "By signing a Form I–864 the 'sponsor agrees to provide support to maintain the sponsored alien at an annual income that is not less than 125 percent of the Federal poverty line during the period in which the affidavit is enforceable.' (8 U.S.C. § 1183a(1)(A).) Federal courts have consistently found that a Form I–864 constitutes a legally binding and enforceable contract between sponsor and a sponsored immigrant." (*Id*. at p. 1024.)

A sponsor's obligations under an I–864 affidavit "terminate[] only if one of five conditions is met: (1) the sponsor dies, (2) the sponsored immigrant dies, (3) the sponsored immigrant becomes a U.S. citizen, (4) the sponsored immigrant permanently departs the U.S., or (5) the sponsored immigrant is credited with 40 qualifying quarters of work. (See 8 U.S.C. § 1183a(a)(2).) Divorce is not a condition under which the

6

sponsor's obligations under Form I–864 can be terminated." (*Shumye*, *supra*, 555 F.Supp.2d at p. 1024.)

Under federal immigration law, an I–864 affidavit must be "legally enforceable against the sponsor by the sponsored alien," and the sponsor must agree "to submit to the jurisdiction of any Federal or State court for the purpose of actions" of enforcement. (8 U.S.C. § 1183a, subd. (a)(1)(B) & (C).) Federal regulation further provides, "The intending immigrants and any Federal, state, or local agency or private entity that provides a means-tested public benefit to an intending immigrant are third party beneficiaries of the contract between the sponsor and the other individual or individuals on whose income the sponsor relies and may bring an action to enforce the contract in the same manner as third party beneficiaries of other contracts." (8 C.F.R. § 213a.2, subd. (c)(2)(i)(C)(2).)

The statute and regulation are clear. A sponsored immigrant has independent standing to enforce the obligations of an I–864 affidavit against her sponsor, and may bring such an enforcement claim in state (or federal) court. Federal and out-of-state courts agree with this proposition. (*Love v. Love* (Pa.Super.Ct. 2011) 33 A.3d 1268, 1273 [contractual obligation of the sponsor's I–864 affidavit "is enforceable by Wife"]; *In re Marriage of Kamali and Alizadeh* (Tex.Ct.App. 2011) 356 S.W.3d 544, 546–547 [enforcing sponsoring husband's I–864 affidavit in state divorce case]; *In re Marriage of Sandhu* (Kan.Ct.App. 2009) 207 P.3d 1067, 1071 [recognizing a sponsored immigrant has independent standing to enforce an I–864 affidavit]; *Naik v. Naik* (N.J.Super.Ct.App.Div. 2008) 944 A.2d 713, 717 [an I–864 affidavit is enforceable by the sponsored spouse in state court]; *Davis v. United States* (6th Cir. 2007) 499 F.3d 590, 595 [state court enforcement of an I–864 affidavit by the sponsored immigrant was "explicitly permitted under the statute"]; (*Moody v. Sorokina* (N.Y.App.Div. 2007) 40 A.D.3d 14, 18 ["The cases that have addressed the enforceability of the Form I–864 affidavit of support by the sponsored immigrant have found . . . that the sponsored immigrant 'has independent standing to enforce the sponsor's obligation' in any federal or state court.' "].)

Vikash does not dispute that an I–864 affidavit is a legally binding contract enforceable by Ashlyne. Instead, he argues the trial court acted within its discretion in terminating the temporary spousal support order under California's statutory scheme for providing spousal support. But this is not Ashlyne's contention. She does not claim she is entitled to additional spousal support as a matter of state law. She contends that she has a contract claim for support based on the obligations of the I–864 affidavit, which the trial court erred in not considering.

Vikash suggests that Ashlyne's contract claim is procedurally improper, asserting Ashlyne "has not brought an action to enforce her rights as a third-party beneficiary in any court of competent jurisdiction," and she "did not join the Department of Homeland Security to the state court dissolution action." Vikash's undeveloped arguments lack merit. He offers no authority that a state court lacks jurisdiction over Ashlyne's contract claim. Nor does he explain why the Department of Homeland Security must be joined as a party to a sponsored immigrant's contract claim based on an I–864 affidavit. As we have seen, by signing the I–864 affidavit, Vikash agreed to submit to state court jurisdiction. (8 U.S.C. § 1183a, subd. (a)(1)(C).) And state courts regularly exercise jurisdiction over contract claims involving I–864 affidavits brought by the sponsored immigrant alone. (See *Love v. Love*, *supra*, 33 A.3d 1268 [Pennsylvania]; *In re Marriage of Kamali and Alizadeh*, *supra*, 356 S.W.3d 544 [Texas]; *In re Marriage of Sandhu*, *supra*, 207 P.3d 1067, 1071 [Kansas]; *Naik v. Naik*, *supra*, 944 A.2d 713, 717 [New Jersey]; *Davis v. United States*, *supra*, 499 F.3d 590, 592 [recognizing propriety of enforcement of I–864 affidavit in Ohio state court]; *Moody v. Sorokina*, *supra*, 40 A.D.3d 14 [New York].)

Vikash argues the I–864 affidavit "is not enforceable in an action brought under state law to enforce support because the Federal Pre-emption Doctrine is not applicable to state support law." This argument misses the mark because Ashlyne does not claim that the field of state support law is completely preempted by the I–864 affidavit. Rather, she correctly recognizes, " '[t]he right of support conferred by federal law exists *apart from*

8

whatever rights [a sponsored immigrant] might or might not have under [state] divorce law.' " (*Erler v. Erler* (9th Cir. 2016) 824 F.3d 1173, 1177, italics added.)

Vikash urges us to consider the analysis of four out-of-state cases, but three of the cases support Ashlyne's position that she may enforce the I–864 affidavit in the current dissolution proceeding. *Barnett v. Barnett* (Alaska 2010) 238 P.3d 594, *Love v. Love*, *supra*, 33 A.3d 1268, and *Iannuzzelli v. Lovett* (Fla.Dist.Ct.App. 2008) 981 So.2d 557, all involve immigrant spouses who sought to enforce I–864 affidavits in state divorce proceedings. In each case, the state court exercised jurisdiction over the immigrant spouse's contract claim based on an I–864 affidavit.[6]

The fourth case Vikash relies on is *In re Marriage of Khan* (2014) 182 Wash.App. 795. In that case, the wife sought to enforce her husband's I–864 affidavit in their divorce proceeding, arguing husband's "I–864 support obligation was a basis for a maintenance award." (*Id*. at p. 798.) The trial court tried to fashion a compromise support order, the end result of which seemingly failed to comport with either state law or the terms of the affidavit.[7] The wife appealed. On appeal, the parties agreed that the

---

[6] In *Barnett v. Barnett*, *supra*, 238 P.3d 594, the trial court entertained the immigrant spouse's contract claim, but found that she was not entitled to support under the terms of the I–864 affidavit. The Alaska Supreme Court affirmed, holding that the trial court did not err in interpreting 8 United States Code section 1183a. (*Id*. at pp. 597–599.) In *Love v. Love*, *supra*, 33 A.3d 1268, the Pennsylvania appellate court held the trial court erred in refusing to consider the I–864 affidavit. The court concluded, "[W]e reject the trial court's conclusion that Wife was precluded from enforcing the affidavit of support during the support proceedings and its attendant holding that Wife is required to initiate a separate civil action based upon the Affidavit seeking either compensatory damages or specific performance." (*Id*. at p. 1275.) In *Iannuzzelli v. Lovett*, *supra*, 981 So.2d 557, the Florida state trial court ruled that the I–864 affidavit was an enforceable contract, but it determined the wife was not entitled to a monetary award under the terms of the affidavit. (*Id*. at 559.) On appeal, the wife acceded to the trial court's factual finding. (*Id*. at p. 561.)

[7] "The trial court concluded that under state law maintenance was not appropriate for several reasons. Nevertheless, it awarded [the wife] maintenance of $2,000 per month through June 2013, three months from the date of the dissolution decree. The trial court based its maintenance award on a perceived conflict between [the husband's] I–864 obligation under federal law and Washington dissolution law. It concluded that [the

9

husband owed the wife an ongoing support obligation under the I–864 affidavit. (*Id*. at p. 801.) The only question was "whether that obligation must be enforced through a maintenance award in the dissolution proceeding." (*Ibid*.) The Washington appellate court concluded that "a maintenance order need not include enforcement of a person's I–864 obligation." The court offered three reasons for its conclusion, the first of which was that there was "no 'conflict' between federal law regarding I–864 obligations and Washington dissolution law because they are independent of each other." (*Ibid*.)[8] The court's other two reasons for its conclusion were that state statute governed the award of maintenance, and that "the beneficiary of an I–864 obligation will not be left without remedy if that obligation is not included in a maintenance award" because she or he can bring a separate contract action. (*Id*. at pp. 802–803.) The *Khan* court left unresolved the question whether a Washington state trial court in divorce proceedings *could* exercise jurisdiction over a sponsored immigrant's contract claim under an I–864 affidavit. (*Id.* at p. 803, fn. 3 ["Although we hold that a trial court is not required to include the I–864 obligation in a maintenance award, we need not address whether a trial court in the exercise of its discretion could incorporate the I–864 obligation into a maintenance award."].)

*In re Marriage of Khan* does not help Vikash, either. It does not stand for the proposition that enforcement of an I–864 affidavit preempts state law. To the contrary, the *Khan* court held that a maintenance award ordered pursuant to Washington state law cannot be based solely on the non-statutory factor of the affidavit. (*In re Marriage of*

wife's] I–864 rights preempted state law and limited its ability to impute income to [the wife] based on her earning capacity and education, and stated that in awarding maintenance it was balancing federal and state law." (*In re Marriage of Khan*, *supra*, 182 Wash.App. at p. 798.)

[8] The appellate court, thus, implicitly rejected the trial court's determination that enforcing the I–864 affidavit involved preemption of state law.

10

*Khan*, *supra*, 182 Wash.App. at p. 802.)[9] Nor did the *Khan* court hold that a state court lacks jurisdiction over a sponsored immigrant's contract claim based on an I–864 affidavit.

Finally, in response to the argument of amicus curiae that a sponsored immigrant must be permitted to enforce an I–864 affidavit in family law proceedings, Vikash takes the position that an I–864 affidavit simply is not enforceable in a dissolution action. He argues, "The place for enforcement is in a civil trial court where the sponsored spouse or governmental agency seeking reimbursement brings a cause of action to enforce the I–864 against the signing sponsor, thereby fulfilling its purpose of making the government whole, not to create a right of support." This argument is unavailing. First, there is no separate "family court" jurisdiction. "In practice, the superior court exercising jurisdiction under the Family Code is known as the 'family court' (or 'family law court'). But there is no separate 'family court' per se. Rather, 'family court' refers to the activities of superior court judicial officers handling litigation arising under the Family Code. The 'family court' is 'not a separate court with special jurisdiction, but is instead the superior court performing one of its general duties.' " (Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 2016) ¶3:3.10, p. 3-3.) There is no reason a superior court hearing a divorce case cannot exercise jurisdiction over an immigrant spouse's contract claim based on an I–864 affidavit. Second, there is no authority for Vikash's argument that an I–864 affidavit does not "create a right of support." Based on our discussion of the law above, the affidavit obviously does create a contractual right to minimum support owed by the sponsor to the sponsored immigrant.

In sum, an I–864 affidavit is an enforceable contract, and a sponsored immigrant has standing to bring an action to enforce it in state court. To the extent the trial court denied Ashlyne's contract claim on the ground she lacked standing to enforce the I–864 affidavit, this was incorrect.

---

[9] Once again, we observe that Ashlyne does not argue she was entitled to support based on state law. As a result, we see no inherent conflict between our decision and the result in *In re Marriage of Khan*.

**C.** *A Sponsored Immigrant Seeking to Enforce an I–864 Affidavit Has No Duty to Mitigate Damages*

When Ashlyne's counsel asked whether her contract claim under the I–864 affidavit was being denied, the trial court responded, "Yes, I'm denying your request because I find the respondent is not using best efforts to find work."

On appeal, Ashlyne urges us to follow the Seventh Circuit Court of Appeals, which held that a sponsored immigrant seeking to enforce the support obligation created by an I–864 affidavit has no duty to mitigate damages. (*Liu v. Mund* (7th Cir. 2012) 686 F.3d 418, 420, 422–423 (*Liu*).)  In *Liu*, the sponsored immigrant Liu and her husband Mund divorced, and Liu brought an action in federal district court for support based on Mund's I–864 affidavit.  The only issue on appeal was whether Liu had a duty to mitigate damages.  (*Id*. at p. 420.)

The Seventh Circuit began its analysis by considering the purpose of the I–864 affidavit.  "The Immigration and Nationality Act forbids admission to the United States of any alien who 'is likely at any time to become a public charge.'  (8 U.S.C. § 1182(a)(4)(A); see also *id*., § 1601(2)(A), (5).)  This provision is implemented by requiring a person who sponsors an alien for admission to 'execute an affidavit of support.'  (8 C.F.R. § 213a.2(a), (b); see also 8 U.S.C. § 1182(a)(4)(C)(ii).)  The affidavit, the contents of which are specified in 8 U.S.C. § 1183a, is in the form of a contract between the sponsor and the United States (8 C.F.R. § 213a.2(d)) called Form I–864.  Public providers of benefits to indigents are designated as third-party beneficiaries of the affidavit-contract and are expressly authorized by the Act to sue a sponsor who defaults on his support obligation.  (8 U.S.C. § 1183a(a)(1)(B); see also § 1183a(b)(1)(A).)"  (*Liu*, *supra*, 686 F.3d at p. 420.)

"[T]he obligation is to support the sponsored alien at 125 percent of the poverty income level; the affidavit must include this requirement.  (8 U.S.C. § 1183a(a)(1)(A).)  The affidavit also, however, specifies several excusing conditions, such as the sponsor's death or the alien's being employed for 40 quarters (also specified as an excusing condition in the statute (8 U.S.C. § 1183a(a)(3)(A)).  But the list of excusing conditions

12

does not mention the alien's failing to seek work or otherwise failing to mitigate his or her damages." (*Liu*, *supra*, 686 F.3d at p. 420.)

The court reasoned: "[T]he stated statutory goal, remember, is to prevent the admission to the United States of any alien who 'is likely at any time to become a public charge.' [Citations.] The direct path to that goal would involve imposing on the sponsor a duty of support with no excusing conditions. Some such conditions are specified; but why should the judiciary add to them—specifically why should it make failure to mitigate a further excusing condition? The only beneficiary of the duty would be the sponsor—and it is not for his benefit that the duty of support was imposed; it was imposed for the benefit of federal and state taxpayers and of the donors to organizations that provide charity for the poor. And Mund can't argue that Form I–864 confused him, for there is no reference in it to a duty of the sponsored immigrant (Liu) to mitigate the damages caused her by the sponsor's (Mund's) breach of his duty of support." (*Liu*, *supra*, 686 F.3d at p. 422.)

The court determined that "[t]he absence of such a duty serves the statutory objective in a second way: it tends to make prospective sponsors more cautious about sponsoring immigrants. The sponsor is the guarantor of the sponsored immigrant's having enough (though just barely enough) income to avoid becoming a public charge. The more extensive—the less qualified—the guaranty, the less likely is an irresponsible immigrant to obtain sponsorship. Liu and Mund had an awful marriage. Had he known that by bringing her to the United States he would be assuming a virtually unconditional obligation to support her indefinitely even if they later divorced, he might not have signed the affidavit . . . ." (*Liu*, *supra*, 686 F.3d at p. 422.) Further, the court observed that a sponsored immigrant would have a strong incentive to seek employment even without a court-imposed duty to mitigate, because the support obligation of 125 percent of the federal poverty line is a "meager guarantee." (*Ibid*.)

The court concluded: "In sum, we can't see much benefit to imposing a duty to mitigate on a sponsored immigrant. The cost, besides the sponsor's diminished incentive to screen the alien for a bad work ethic, would be the increased complication of enforcing

13

the duty of support by giving the sponsor a defense—and not even a defense likely to prevail. If Liu doesn't want to work, forcing her to make job applications is unlikely to land her a job." (*Liu*, *supra*, 686 F.3d at p. 422–423; see also *Zhu v. Deng* (N.C.Ct.App. 2016) 794 S.E.2d 808, 812–813 [sponsored immigrant "has no affirmative duty to mitigate her damages under" the I–864 affidavit].)

We find *Liu* persuasive, and hold that an immigrant spouse seeking to enforce the support obligation of an I–864 affidavit has no duty to seek employment to mitigate damages.[10] Accordingly, we conclude it was error to deny Ashlyne's contract claim on the ground she had failed to use best efforts to mitigate damages.

## DISPOSITION

The judgment is reversed. The case is remanded for the trial court to consider Ashlyne's contract claim based on the I–864 affidavit in accordance with our decision. We express no opinion on the merits of Ashlyne's contract claim. Ashlyne shall recover her costs on appeal.

---

[10] We recognize there are cases that assume there is a duty to mitigate. But in those cases, it does not appear that the issue whether the support obligation of an I–864 affidavit imposes a duty to mitigate upon the sponsored immigrant was squarely raised. (E.g. *Younis v. Farooqi*, *supra*, 597 F.Supp.2d at p. 556 ["Assuming the plaintiff has an obligation to mitigate her damages by seeking employment, she need not apply for every available job in order to mitigate her losses; she need only make reasonable efforts."]; *Love v. Love*, *supra*, 33 A.3d at p. 1278 [finding the sponsor-husband failed to raise the affirmative defense of failure to mitigate, the court observed, "Although the Affidavit does not create a duty for Wife to mitigate her damages associated with Husband's breach, we acknowledge Wife's common law duty to mitigate."].)

14

 

 

_____

Miller, J.

We concur:

_____

Kline, P.J.

_____

Stewart, J.

A145181, *Kumar v. Kumar*

Trial Court:  Superior Court of San Mateo County

Trial Judge:  Hon. Don Franchi

| | |
|---|---|
| Attorneys for Appellant | J. Neel Chatterjee<br>Edwin Steussy<br>Orrick Herrington & Sutcliffe LLP<br><br>Erin C. Smith<br>Jennafer D. Wagner<br>Shuray Ghorishi<br>Family Violence Appellate Project<br><br>Protima Pandey<br>Bay Area Legal Aid |
| Attorneys for Respondent | Margaret Sharon Tillinghast |
| Attorneys for Amicus Curiae<br>National Immigrant Women's<br>Advocacy Project<br>in support of appellant | David Ginsberg<br>Harsh Parikh<br>Judy Choi |

A145181, *Kumar v. Kumar*