J-S33019-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| HAZEL M. FOLTZ | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAMES H. FOLTZ | : | No. 304 MDA 2024 |

Appeal from the Order Entered January 26, 2024
In the Court of Common Pleas of Mifflin County Domestic Relations at
No(s): CP-44-SPA-45-2023,
PACSES No. 104302030

BEFORE: OLSON, J., KUNSELMAN, J., and NICHOLS, J.

MEMORANDUM BY KUNSELMAN, J.:                    **FILED DECEMBER 17, 2024**

Hazel M. Foltz (Wife) appeals the order issued by the Mifflin County Court of Common Pleas, which established the obligation of James H. Foltz (Husband) to pay spousal support. Wife argues that the trial court should have deviated from the basic guideline amount to increase the amount of the support award. After careful review, we affirm.

The relevant factual and procedural background is as follows. Husband and Wife have been married for nearly 60 years. They are now separated, although no divorce proceedings have been initiated. Wife lives in the marital home, while Husband lives in a VA long-term care facility. Wife filed for spousal support. Wife's only means of income was social security ($1,240); Husband received social security and retirement income ($3,430.96). Following a support conference, it was recommended Husband pay Wife

$636.22 per month in support (plus arrears), pursuant to the statutory guidelines, which left Wife with a total monthly net income of $1,876.22.

Wife requested a *de novo* hearing before the trial court. She argued that Husband's support obligation should be deviated upward for two reasons. First, Wife maintained that a deviation under Pa.R.C.P. 1910.16-5(b) was appropriate, because she should be treated like "a community spouse" under the Medicare Catastrophic Coverage Act, which would have entitled her to $2,465 per month as a "Minimum Monthly Maintenance Needs Allowance" (MMMNA). **See** 42 U.S.C. § 1396r-5(d);(h).

Alternatively, Wife argued that a personal loan should have been considered as a part of a mortgage deviation under Pa.R.C.P. 1910.16-6(e). After the hearing, trial court took the matter under advisement. On January 26, 2024, the trial court denied Wife's request, determining that she was not entitled to any deviation.

Wife timely filed this appeal. She presents the same two issues for our review:

1. Whether the trial court erred in deviating from the support guidelines in accordance with Pa.R.C.P. 1910-16.5(b) by failing to consider the minimum monthly maintenance needs allowance for a community spouse where the obligor spouse is in a long-term care facility.

2. Whether the trial court erred in refusing to deviate from the support guidelines, or consider [the Rules of Procedure considering mortgage deviation].

Wife's Brief at 4.

We review support awards for an abuse of discretion. ***See Hanrahan v. Bakker***, 186 A.3d 958, 966 (Pa. 2018).

> When evaluating a support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground. We will not interfere with the broad discretion afforded the trial court absent an abuse of the discretion or insufficient evidence to sustain the support order. An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused.

***Silver v. Pinskey***, 981 A.2d 284, 291 (Pa. Super. 2009) (*en banc*) (citations omitted).

In Pennsylvania, spousal support awards are calculated in accordance with specific statutory guidelines. ***See*** 23 Pa.C.S.A. § 4322(a); ***see also*** Pa.R.C.P. 1910.16-1. The guidelines ensure that similarly situated persons are treated similarly. § 4322(a). The guidelines are based on the reasonable needs of the spouse seeking support and the ability of the obligor to provide support. ***Id.*** The emphasis is on the parties' net incomes, with allowable deviations for unusual needs, extraordinary expenses and other factors that warrant special attention. ***Id.*** There is a rebuttable presumption that the amount of the award resulting from the application of the guidelines is the correct amount. § 4322(b).

Should the trier-of-fact deviate from the basic guideline amount, the Pennsylvania Rules of Civil Procedure set forth certain factors which must be

considered: "(1) unusual needs and unusual fixed obligations; (2) a party's other support obligations; (3) other household income; (4) the child's age [(in matters pertaining to child support deviation)]; (5) the parties' relative assets and liabilities; (6) medical expenses not covered by insurance; (7) the parties' and the child's standard of living [(regarding child support)]; (8) in a spousal support or alimony *pendente lite* case, the duration of the marriage from the date of marriage to the date of final separation; and (9) other relevant and appropriate factors[.]" Pa.R.C.P. 1910.16-5(b) ("Support Guidelines. Deviation").

Wife does not contest the trial court's calculation of the basic guideline amount. Rather, Wife claims the trial court should have deviated upward from the basic guideline amount, as permitted by the Rules. She maintains deviation was appropriate for two reasons. We address each in turn.

In her first appellate issue, Wife presents a novel argument. She analogizes her and Husband's situation to those spouses receiving Medicaid Long Term Care (LTC) benefits. Under the Medicare Catastrophic Coverage Act, if one spouse enters a nursing facility (deemed the "institutionalized spouse"), then the other spouse (deemed the "community spouse") might be entitled to a Minimum Monthly Maintenance Needs Allowance (or "MMMNA"). *See* 42 U.S.C. § 1396r-5(h). The MMMNA reflects a "legislative judgment that a [community spouse] should have a basic monthly income to cover housing and the costs associated with housing, with an additional amount to ensure that the [community spouse] can afford other necessities of life, such as food

and clothing." **See Kuznick v. Department of Public Welfare**, 5 A.3d 832, 833 n.4 (Pa. Cmwlth. 2010) (citing 42 U.S.C. §§ 1396r-5(d)(3) and 55 Pa. Code § 181.452(d)). Put another way, the MMMNA shields the community spouse from the necessary spenddown of a couple's financial resources when the other spouse enters a nursing home.

Wife argues that the trial court should have deviated from the basic support amount to treat her as if she were a community spouse, even though Husband does not receive Medicaid LTC benefits. Put in raw numbers, Wife proposes that an upward deviation ($588.78) be added to recommended support award ($636.22), which when combined with her social security income ($1,240), would leave her with the equivalent of an MMMNA ($2,465). Wife cites no direct authority to support her argument, and we have discovered none. By way of analogy, however, she offers our decision in **Love v. Love**, 33 A.3d 1268 (Pa. Super. 2011).

In **Love**, the trial court issued an order obligating the husband to pay spousal and child support to the wife. The wife was an immigrant, and as such, the husband had previously executed an affidavit of support pursuant to the Immigration and Nationality Act. The affidavit required the husband to sponsor the wife by providing her with a minimum level of financial support (equal to 125 percent of the federal poverty guidelines). This level of financial support was higher than the basic guideline amount of support ordered by the trial court. The wife argued the trial court erred, because it did not deviate from the spousal support guideline amount, leaving her short of what the

husband agreed to pay under the immigration sponsorship affidavit.  *See generally Love*, 33 A.3d at 1271-73.

*Love* concerned several important issues, which are not analogous to the case before us.  Notably, we explained that the husband's sponsorship affidavit (*i.e.*, his promise of support) was a contractual obligation.  *Id.* at 1273.  This obligation was independent of spousal support and would survive divorce; the obligation was enforceable by wife, the federal government, any state government, and any governmental agency.  *Id.*  We then had to decide whether the wife could enforce the contractual obligation *via* our state support system, or whether she had to seek a separate civil remedy, either in the state or federal court.  *See id.*; *see also Nicholson v. Combs*, 703 A.2d 407 (Pa. 1997); *but see Love*, at 1280-81 (Freedberg, J., Dissenting).  Ultimately, we concluded the trial court had to enforce the husband's contract to pay the agreed upon amount, as part of the support action.  *Id.* at 1273.

Relevant here, we held that the trial court should have used the deviation factors under Rule 1910.16-5(b) to enforce the husband's contractual obligation, per the sponsorship affidavit.  *Id.*  The trial court "could have, but failed to, utilize Pa.R.C.P. 1910.16-5(b)(1) and (9) to enforce the affidavit as an allowable deviation from the support guidelines."  *Id.* at 1275.  As noted above, Rule 1910.16-5(b)(1) pertains to the "unusual needs and unusual fixed obligations;" (b)(9) includes "other relevant and appropriate factors."  Thus, we agreed with the wife that a deviation was appropriate based on the husband's "uncontested commitment to support her at a

minimum amount equal to 125 percent of the federal poverty guidelines [(as set forth in the Immigration and Nationality Act)]." *Id.* We found this agreement was "tantamount to an exceptional circumstance that would warrant a deviation from the guideline amount." *Id.*

Returning to the instant case, Wife argues *Love* is on point. She maintains that the trial court had to bring her support award up to the MMMNA level, just as the trial court in *Love* had to bring the wife's support award up to the level set forth by the husband's affidavit of sponsorship under the Immigration and Nationality Act. In both cases, Wife argues, the lynchpin was Rule 1910.16-5(b).

Wife's reliance on *Love* is logical, but in the end unavailing. Critically, the trial court in *Love* had no choice but to deviate from the guideline support amount to enforce the husband's contractual obligation. Rule 1910.16-5(b) (the deviation factors) was simply the mechanism that enabled the trial court to adjust the award.

Here, by contrast, the trial court retained its discretion. There is no analogous entitlement or contractual obligation mandating the court's enforcement. Husband does not receive Medicaid LTC benefits and Wife is not entitled to an MMMNA. This fact disposes of Wife's claim.[1]

---

[1] We do not reach the question, whether a trial court must utilize the state support system to enforce an MMMNA entitlement, in the same manner that the *Love* trial court was required to enforce an immigration sponsorship entitlement.

Notably, the trial court could have employed Rule 1910.16-5(b) to bring Wife's award up to the same level as an MMMNA by considering Husband's circumstances and their effect on the parties' finances. Rule 1910.16-5(b) provides several applicable factors, to say nothing of the catchall "other relevant and appropriate factors" enumerated in (b)(9). Unlike in **Love**, here the trial court had discretion to determine whether Wife rebutted the presumption that guideline amount was correct and grant an upward deviation based on these factors. **See** Pa.R.C.P. 1910.16-5 – 2005 Comment; **cf.** 23 Pa.C.S.A. § 4322(b). The court considered Wife's request, but ultimately determined that no deviation was appropriate. Upon review, nothing in the record indicates the trial court "overrode or misapplied the law," or exercised judgment that was "either manifestly unreasonable or the product of partiality, prejudice, bias or ill will." **See Silver**, 981 A.2d at 291. Wife's first issue merits no relief.

In her next appellate issue, Wife presents an alternative reason to support her claim for an upward deviation. Wife argues that a personal loan she took out for roof repairs should have qualified for the "mortgage deviation." To explain, the guidelines assume that the spouse occupying the marital residence will be solely responsible for the mortgage payment, real estate taxes, and homeowners' insurance. **See** Pa.R.C.P. 1910.16-6(e). Accordingly, pursuant to Rule 1910.16-6(e)(1), the court may require the obligor (here, Husband) to pay an additional amount, if: the obligee (here, Wife) is living in the marital residence; and the mortgage payment exceeds

25% of the obligee's monthly net income (including spousal support).  In such a circumstance, the court may require the obligor to pay up to half of the excess.

Importantly, Rule 1910.16-6(e)(4) defines "mortgage" as "a first mortgage, real estate taxes, and homeowners' insurance **and may include** a subsequent mortgage, a home equity loan, and other marital obligations secured by the marital residence." (Emphasis added).

In this case, the parties' mortgage did not quite meet the 25% threshold.  The mortgage payment was $446.81; Wife's monthly net income, including the guideline support award, was $1,876.22; thus, the mortgage payment constituted 23.81% of Wife's income, just shy of the 25% threshold.

However, Wife argued to the trial court that if her personal loan payment was added to the mortgage payment, as permitted by Rule 1910.16-6(e)(4), then the combined encumbrance would equate 35.37%, well over the 25% threshold.[2]  Wife maintained that her the personal loan should have been considered under the Rule 1910.16-6(e)(4) definition of a mortgage, because it was related to the house (*i.e.*, roof "weatherization.").[3]  If considered, then pursuant to Rule 1910.16-6(e)(1), Wife would have been entitled to a

---

[2] $446.81 (monthly mortgage payment) + $216.89 (monthly payment on Wife's personal loan) = $663.70 ÷ $1,876.22 (Wife's total monthly net income, including the guideline award) = 35.37%.

[3] It is unclear whether Wife's personal loan was a home equity loan.  It does not matter.  **See** Pa.R.C.P. 1910.16-6(e)(4).

mortgage deviation – *i.e.*, up to half of the excess: $97.28.[4]  All told, Wife's maximum deviation would have increased her guideline support award from $636.22 to $733.50.[5]  The trial court denied Wife's request for a mortgage deviation.

On appeal, Wife claims that the trial court's opinion did not adequately address her request.  She asks that this Court remand and direct the court to consider and then opine whether such a deviation was appropriate.  ***See*** Wife's Brief at 10-11.  Under Pennsylvania Rule of Appellate Procedure, "the judge who entered the order giving rise to the notice of appeal, if the reasons for the order do not already appear of record, shall…file of record at least a brief opinion of the reasons for the order, or for the rulings or other errors complained of, or shall specify in writing the place in the record where such reasons may be found."  Pa.R.A.P. 1925(a).

Here, the trial court issued a statement in lieu of an opinion upon the filing of Wife's concise statement of matters complained of on appeal.  Therein, the court stated, after review of Wife's alleged errors, it believed that the explanation in its order satisfied the requirements of Pa.R.A.P. 1925(a).

---

[4] The total excess is 10.37%, or $194.56.

35.37% (combined encumbrance relative to Wife's total monthly net income) - 25% (threshold percentage) = 10.37% (excess percentage) X $1,876.22 (Wife's total monthly net income) = $194.56 (raw excess dollars) X 50% (statutory maximum percentage) = $97.28 (statutory maximum Rule 1910.16-6(e) deviation).

[5] $636.22 (guideline award) + $97.28 (maximum Rule 1910.16-6(e) deviation) = $733.50.

Although a more thorough explanation of its decision would have been welcomed, we find the trial court's statement and order satisfied Pa.R.A.P. 1925(a). The order indicated that the court did consider the Wife's mortgage/loan claim *vis-à-vis* Pa.R.C.P. 1910.16-6(e). The statement in lieu of an opinion further indicated that the court reviewed Wife's appellate issues and concluded they were meritless. Upon review of the transcript of the proceeding, we observe that the mortgage issue was put squarely before the court. The court then took the matter under advisement. Simply put, there is nothing to suggest the court failed to consider Wife's argument. No remand is necessary.

To the extent that Wife preserved the substantive claim – namely, whether the trial court erred when it refused to include a mortgage deviation – we hold that the court acted within its discretion. Rule 1910.16-6(e) states clearly the court "***may*** include a subsequent mortgage, home equity loan, and other marital obligations secured by the marital residence." (Emphasis added). The 2005 Comment to Pa.R.C.P. 1910.16-6(e) clarifies: "While real estate taxes and homeowners' insurance must be included if the trier-of-fact applies the provisions of this subdivision, the inclusion of second mortgages, home equity loans and other obligations secured by the marital residence is

***within the trier-of-fact's discretion*** based upon the circumstances of the case." (Emphasis added).[6]

Nothing required the trial court to include Wife's personal loan when determining whether she qualified for a mortgage deviation. Wife does not convince us the court abused its discretion for failing to grant her request for an upward deviation based upon this loan. Upon review of the facts of record, we cannot hold that the court's decision was "manifestly unreasonable." We discern no "misapplication of law" or "bias, ill-will or prejudice." ***See Silver***, ***supra.*** Wife's second issue merits no relief.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/17/2024

---

[6] Moreover, we have long held that the use of the term "may" denotes the discretionary options of the trial court. ***See Raymond v. Raymond***, 279 A.3d 620, 629 (Pa. Super. 2022) (citing ***In re Slaughter***, 738 A.2d 1013 (Pa. Super. 1999) and 1 Pa.C.S.A. § 1921).